The Illinois Central Railroad Company

*v.*

John Sporleder.

*Opinion filed October 25, 1902.*

1. Trial—*when case should go to jury in action for negligence.* In an action by a section hand for injuries claimed to have been received while obeying orders of his foreman to do work in a dangerous manner, if the evidence is conflicting as to the language used by the foreman, the jury should determine what directions were given, what conclusions the plaintiff might draw therefrom, and whether the hazard of obedience to such directions was so imminent that a man of ordinary prudence would not have incurred it.

2. Master and servant—*when a foreman's order is specific.* An order by a section foreman to one of his men to take a claw-bar and pull the spikes in a certain rail half way out and for another man to take a maul "to drive the bar for him," is a specific order to draw the spikes by using the claw-bar and maul, and is not a direction which the servant might carry out in his own manner.

*Illinois Central Railroad Co.* v. *Sporleder*, 100 Ill. App. 626, affirmed.

Appeal from the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of St. Clair county; the Hon. William Hartzell, Judge, presiding.

Kramer, Creighton & Shaeffer, (John G. Drennan, of counsel,) for appellant.

Webb & Webb, and Dill & Wilderman, for appellee.

Mr. Justice Hand delivered the opinion of the court:

This is an action on the case to recover damages for a personal injury sustained by the appellee while in the employ of the appellant as a section hand. The declaration contains one count, and is in substance as follows: That appellee, while employed by appellant ·as a section hand, was called to Belleville to assist in removing a wreck caused by a freight train and passenger train colliding on a railroad of appellant at that place; that

while so engaged, appellee was under the directions and orders of his section foreman, one William Gamble, who had power and authority to direct appellee in the discharge of his duties; that said Gamble ordered appellee and a co-laborer by the name of George Trinkler to pull steel spikes which held a certain rail to ties; that said foreman directed appellee to take a claw-bar, used for the purpose of pulling spikes, and said Trinkler to drive the claw-bar under the heads of the spikes while held by appellee; that the spikes had become deeply imbedded in the ties; that the prongs of the claw-bar could not be forced under the heads of the spikes without being driven; that while the claw-bar was being driven under the head of a spike a small piece thereof broke off and struck appellee in the eye and destroyed the sight thereof; that the orders and directions of the foreman were wrongful and negligent, and that the manner in which he directed the work to be done was dangerous and hazardous, all of which was known to the appellant and unknown to the appellee. To the declaration the appellant filed the general issue, and a trial resulted in a verdict and judgment in favor of appellee for $3500, which has been affirmed by the Appellate Court for the Fourth District, and the record has been brought to this court for further review.

The only question argued in this court is, that the trial court erred in refusing to direct a verdict for the appellant.

The evidence shows that on the 24th day of June, 1899, a collision occurred between a passenger train and a freight train upon appellant's railroad in the city of Belleville; that the track was torn up, the rails twisted, the trains derailed and travel obstructed; that appellee, with about fifty other section men, was called in and was assisting in removing the wreck and repairing the track; that appellee had been in the employ of the appellant as a section hand for about two and one-half

years, and was under the direct supervision of a section foreman by the name of Gamble; that he went to work at the wreck at about nine o'clock in the forenoon of the day upon which it occurred, and at about half-past six of the same evening was directed by Gamble to take a claw-bar and pull the spikes half-way up in a rail which was pointed out to him by Gamble; that at about the same time Trinkler, who had been employed under Gamble as a section hand for about eight months, was directed by Gamble to get a spike-maul and assist appellee in pulling the spikes,—to "drive the bar for him;" that after three or four spikes had been pulled appellee came to a spike which was so firmly imbedded in the tie that he could not get the prongs of the claw-bar under the head thereof, when Trinkler struck the claw-bar upon the heel to force the prongs under the head of the spike, when a small particle of the spike flew off and struck appellee in the eye and destroyed the sight thereof. The evidence further tended to show that the usual way in which spikes are drawn is to use a claw-bar to lift them from the tie; that when a spike is so imbedded in the tie that the prongs of the claw-bar could not be readily forced under the head of a spike, the hard wood around the spike would be removed with an adze, so that the prongs would firmly take hold of the neck of the spike. A number of witnesses testified that it was dangerous to attempt to force the prongs of the claw-bar under the head of a spike without adzing it, when the wood surrounding it is hard, by striking the claw-bar upon the heel, as the head of the spike, or particles therefrom, would be liable to fly off and injure the person holding the claw-bar. The appellee testified that he had not pulled spikes, prior to the time he was injured, by forcing the prongs of the claw-bar under the head of the spike by striking the claw-bar upon the heel with a maul, and that it was dangerous and unsafe, in his judgment, to pull them in that way; that he knew the spike which

he was attempting to pull at the time of the injury should have been adzed, and that he only attempted to pull it in the manner in which he did by reason of the fact that he was so ordered to do by his foreman.

It seems to be conceded by appellant that had Gamble been present and ordered appellee to pull the particular spike in the pulling of which he was injured, by having Trinkler strike the claw-bar upon the heel with the maul, the appellant would be liable; but it is contended that as Gamble was not present at the time the particular spike was being pulled, and that as he had only given the appellee a general order to remove the spikes from the rail which he had pointed out to him, without specifying the manner in which they should be pulled, the appellant is not liable. In other words, the general doctrine as announced by this court in the cases of *Chicago Anderson Pressed Brick Co.* v. *Sobkowiak*, 148 Ill. 573, *Offutt* v. *World's Columbian Exposition*, 175 id. 472, and *Graver Tank Works* v. *O'Donnell*, 191 id. 236, where it is held that a servant ordered by his foreman to work in a dangerous place or perform work in a dangerous manner is not required by law to disobey him, nor by obeying assume the hazard or risk of obedience, unless the danger is so imminent that a man of ordinary prudence would not incur the risk, and that whether the danger to which the servant was exposed was so imminent that a man of ordinary prudence would not have incurred it is a question of fact for the jury, is fully recognized by the appellant, and this case is attempted to be distinguished from those and similar cases and taken out of the rule therein announced. We fully agree with the contention of appellant that where a servant is familiar with the work to be performed and the method of performing it, and he is given a general order to perform such work, the method of performing the same being left to his own discretion, and in doing the work he is injured by reason of the negligent and careless manner in which he does the work, the mas-

ter cannot be held liable. In this case, however, the evidence shows the servant was engaged in assisting other workmen in the removal of a wreck which was blocking appellant's railroad; that night was coming on and the work was being rushed; that the foreman directed the appellee to take a claw-bar, and the witness Trinkler to go with him to "drive the bar for him" and to pull the spikes half-way up from a rail which was pointed out to him by the foreman. This was not a general direction but a specific order, and seems to have been understood by the appellee and his co-workman as a direction to them to pull the spikes from the rail pointed out, by using the claw-bar and maul. At the time the direction was given, Trinkler obtained a small maul, whereupon Gamble ordered him to get a large one. Why get a large maul unless that he might drive the claw-bar with greater force and more quickly under the head of the spike than he could with a small one? The appellant urges that the large maul was to be used to drive the spikes further into the tie, and thereby loosen them and put them in condition so that they could be more readily pulled. If that was the object of getting the large maul it was not used for that purpose, but for the purpose of driving the bar. The witnesses for the respective parties did not agree as to the language used by the foreman at the time the directions were given to pull the spikes. To determine what directions were given by the foreman to the appellee and his co-workman, what conclusions the appellee might legitimately draw therefrom, and whether the hazard to which the appellee was exposed in obeying such instructions was so imminent that a man of ordinary prudence would not have incurred it under the circumstances, was properly left to the jury.

We are of the opinion the trial court did not err in declining to take the case from the jury. The judgment of the Appellate Court will therefore be affirmed.

*Judgment affirmed.*