### Chicago & Alton Railway Company v. Samuel Yarber.

1. MASTER AND SERVANT—*obligation of former when servant is ordered to perform particular work.* When a master orders a servant to perform his work, the latter has a right to assume that the former, with his superior knowledge of the facts, would not expose him to unnecessary peril and the servant has a right to rest upon the assurance that there is no danger which is implied by such order. Where the servant performs work pursuant to order in the presence of the master and in the presence of the vice-principal of the master, the servant does not assume the risk unless the

danger which he incurs is so great that an ordinarily prudent person would refuse to obey the order.

2. EXPERT TESTIMONY—*when competent.* Expert testimony is competent with respect to the manner in which a car was moved and handled or should have been moved and handled.

Action in case for personal injuries. Appeal from the Circuit Court of McLean county; the Hon. COLOSTIN D. MYERS, Judge, presiding. Heard in this court at the November term, 1906. Affirmed. Opinion filed December 7, 1907.

KERRICK & BRACKEN, for appellant; F. S. WINSTON, of counsel.

LIVINGSTON & BACH, for appellee.

MR. JUSTICE RAMSAY delivered the opinion of the court.

Appellee instituted suit in the Circuit Court of McLean county against appellant to recover damages arising from an injury sustained by him through the alleged negligence of appellant. There was a verdict in favor of appellee in the sum of $4,700, upon which the court rendered judgment. The case comes to this court by appeal.

Appellee was employed by appellant to work as a bridge builder and while so at work was one of a gang of seven men, one of whom, Napoleon Fielder, was the foreman of the gang. On February 17, 1906, such gang of men was engaged under said Fielder's orders, in the removal of two box cars from near appellant's freight house in Bloomington to a place about forty feet from where they were standing. The cars were of the usual size, were old, and some of the evidence tends to show, loose in the joints and in some of their parts decayed. They had not been in use upon the tracks for a while prior to the time in question, but had been mounted upon timbers or posts about ten inches square, with the trucks entirely removed, and had been used for storage purposes by appellant, with materials inside variously estimated at from 12,000

pounds to 20,000 pounds in weight, while upon the top or roof of one of the cars there were piled from 100 to 200 cross-arms intended for use on telegraph poles and estimated to weigh 3,000 pounds.

In removal, the cars were first hoisted, by use of jacks, to a height sufficient to admit of the use of heavy planks and rollers underneath, when they were lowered by jacks and moved by block and tackle to the position where it was intended to leave them. When the first car was thus moved the load of cross-arms that was then on its roof was taken from that car by order of Fielder and put upon the roof of the second car and moved with that car, and upon its roof, to the place where the car was to remain.

When the cars had been removed to the place where they were to remain they were to be hoisted by the use of jacks again, and there propped or supported by the use of heavy timbers to be there continued in their use for the storage of wire and other supplies used in appellant's telegraph department.

The first car seems to have been moved, jacked and put upon its support without trouble. In the removal of the second car, however, the evidence tends to show that there was complaint made by men in the gang to Fielder that the cross-arms that had been taken from the roof of the first car upon its removal, should also be taken from the roof of the second car while it was being moved and that to leave them upon the roof of such second car would tend to make it top-heavy and unsafe to handle upon the jacks, to which Fielder replied that he was an old house-mover and that the car was safe or all right.

When the second car with the cross-arms upon its roof had been gotten in place where it was to remain in close proximity to the first car moved, Fielder ordered jacks to be put under the corners preparatory to putting it upon the timbers upon which it was to remain. In this work appellee and one of his comrades worked at the east end of the car. When the

car had been jacked to about its proper height (nearly three feet from the ground) Fielder ordered the cribbing that had been used under the car taken out so that the car rested upon jacks, one at or near each corner, and nothing else. The members of the gang working at the opposite end of the car from appellee procured two large beer barrels which they set under the corners of the car at the end at which they were working, upon which they placed an oak tie, the top of which was several inches below the bottom of the car, upon which it was proposed to rest that end of the car, when the car was in readiness to be lowered. While the men at the west end of the car had thus set the beer barrels and tie for a support at their end of the car when lowered, appellee and his comrade had blocked one corner of the car at their end near a jack, which blocking Fielder took or ordered out and set a beer keg under the car in its place. Fielder then attempted to run a tie similar to the one in use at the west end of the car, under the end of the car where appellee was at work and rest the same on two beer kegs, one on each side or under the car, to form a support at that end of the car. In this attempt he upset the beer keg, which was smaller than the others, at the end of the tie farthest from him, whereupon, as appellee claims he ordered appellee to go around and set up the small beer keg and put a block on it that he, Fielder, might place his tie in position to rest the car upon it. Appellee in obedience to this order had to go between the two cars which were only about eighteen inches apart. While he was thus between the cars in the act of putting a block upon the top of the small beer keg, one of the jacks "kicked," the car swayed and rammed, or fell against the other car, and appellee was caught between them in such a manner that he sustained an injury that is now claimed by him to be permanent.

Appellant first contends that Fielder made no representation as to the safety of the car and did not

order appellee to go around and set up the beer keg. Whether or not Fielder did or did not do either or both of the things so challenged was purely a question of fact for the jury to determine under the evidence. While the testimony respecting Fielder's orders to appellee and his comrades was in conflict, yet there is evidence, sufficient to warrant the jury in finding that Fielder said, when the men complained of the condition of the car, and of the weight upon its roof, that the car was all right; that he was an old housemover and that there was no danger. Appellee testified that Fielder directed him to go between the cars and put the keg in place and that he attempted to do so in obedience to such order, while Fielder denied giving such order at all. This question of fact the jury solved by accepting the story of appellee.

In weighing the evidence the jury were quite likely influenced by the fact that, if Fielder's testimony was true, then appellee entered the place of danger purely as a volunteer and not by any orders. In view of the fact that Hummer, a witness for appellant, one of the men who worked at a jack under the car, had testified that "when they began to pull the timbers out he began to crawl," it is not at all strange that the jury did not believe that when appellee went under the car resting solely upon four jacks, he did not do so as a volunteer. It is true that some of the members of the gang say they did not hear the order given that appellee says he obeyed, yet the testimony of such witnesses cannot be regarded as so conclusive in character that we can say that the jury were unwarranted in finding as they did. We are not disposed to hold that the verdict is manifestly against· the weight of evidence.

Appellant next contends that the danger incident to appellee's task was known and appreciated by him and that the risk was therefore an assumed one. "When the master orders the servant to perform his work, the latter has a right to assume that the former,

with his superior knowledge of the facts, would not expose him to unnecessary perils. The servant has a right to rest upon the assurance that there is no danger, which is implied by such an order." Gundlach v. Schott, 192 Ill. 509.

The claim made by appellant that appellee knew of the danger and assumed the risk would apply if the appellee was a volunteer, as appellant contends he was, or if he undertook the hazardous task in the usual course of employment and without direct command of his employer; but that rule has no application where the employer or vice principal is present and gives an express order which the servant is bound either to obey or quit his work. In such cases the servant is protected in obeying the command of his employer to work in a dangerous place unless the danger is so imminent that a man of ordinary caution would not incur the risk even though directed to do so by his employer. Graver Tank Works v. O'Donnell, 191 Ill. 236; I. C. R. R. Co. v. Sporleder, 199 Ill. 184-187. Whether or not the danger was so great that an ordinarily prudent person would have refused to obey the order was a question of fact for the jury under the evidence. Pressed Steel Car Co. v. Herath, 207 Ill. 576.

Appellant next argues that there was error in admitting expert testimony upon the part of appellee in regard to the manner in which the car was moved and handled, or should have been handled. The testimony in question was to the effect that under the circumstances recited, it was not reasonably safe to hoist a loaded car on jacks to the extent of about three feet from the ground without the use of cribbing or blocking under it. No objection was made to the form of the question, nor was it claimed that the question did not recite the facts fairly upon which an opinion was asked. The objection was a general one only and therefore had relation alone to the admissibility of the testimony. In Gundlach v. Schott, 192

Ill. 509, the opinion of witnesses was received as to whether or not the manner in which a belt was run upon a pulley was reasonably safe and the court there said, whether or not the use of a twisted belt was dangerous, clearly was not a matter of common knowledge; to say the least, it was not a matter of so common knowledge to the jury that it can be said the trial court committed error in permitting the introduction of expert evidence.

In Metropolitan Life Ins. Co. v. Mitchell, 175 Ill. 322, a witness was permitted as an expert to say that an elevator used for conveying materials and employes from one story to another in a manufacturing building was properly or improperly constructed and operated. This the court said was not error.

In Degenhart v. Gent, 97 Ill. App. 146, it was held that where the matters inquired about were not within the range of common experience and observation, expert testimony was competent.

In the case at bar we do not think there was any reversible error in admitting the testimony complained of.

Appellant contends that there was error in the action of the court in the giving of appellee's instructions and in refusing some of those offered by appellant; but a review thereof satisfies us that there was no such error in that regard that appellant could have been prejudiced thereby. The instructions given stated all the propositions of law involved with substantial accuracy.

The judgment is affirmed.

*Affirmed.*