SAMUEL YARBER, Appellee, *vs.* THE CHICAGO AND ALTON RAILWAY COMPANY, Appellant.

*Opinion filed October 26, 1908.*

1. EVIDENCE—*when opinion evidence is not admissible.* The opinions of expert witnesses as to whether the method employed by a railroad foreman in raising the body of a box-car was reasonably safe cannot be received as evidence, where all the facts upon which such opinions are founded can be ascertained and made intelligible to the jury.

2. MASTER AND SERVANT—*master should use reasonable care to see that a servant is not unnecessarily exposed to danger.* While the requirement that the master must use reasonable care to furnish his servant a safe place in which to work must, where the work is necessarily attended with some danger, be considered in connection with that fact, yet it is the master's duty to use reasonable care to see the servant is not unnecessarily exposed to danger.

3. SAME—*when a servant does not assume risk of obedience to an order.* A servant does not assume the risk of obedience to an order which exposes him to unusual or unnecessary danger, unless

the danger is so imminent that a man of ordinary prudence would not have incurred it. (*Swiercz* v. *Illinois Steel Co.* 231 Ill. 456, explained.)

4. SAME—*master is liable though an accident concurs with his negligence.* A master is liable for an injury to his servant caused by the master's negligence concurring with an accident or the negligence of a fellow-servant of the injured person, without which the injury would not have occurred.

5. SAME—*when a foreman's representation of safety is too remote.* A representation by a foreman that a box-car is in safe condition to be moved is too remote to be relied upon by a servant as an order exposing him to a danger arising after the car has been moved to its new location and is standing upon jacks, ready to receive the blocking.

6. APPEALS AND ERRORS—*when motion for new trial is necessary.* In a jury trial, if it is desired to save for review the question of the sufficiency of the evidence to sustain the verdict, the losing party must make a motion for a new trial, and, upon its being overruled, except to such ruling, and include such motion, the order overruling the same and his exception thereto, together with the evidence, in the bill of exceptions.

7. SAME—*statute requiring reasons for motion for new trial to be in writing is not mandatory.* The provision of the Practice act directing a party moving for a new trial to file the points in writing, particularly specifying the grounds of his motion, is directory and not mandatory, although the party making the motion may be required by the court or the opposite party to specify the points in writing.

8. SAME—*rule relating to motions for new trial.* If a motion for new trial is made without specifying the grounds therefor in writing, and no requirement is made that such grounds shall be specified, the party making the motion may avail himself of any cause for new trial which may appear in the record; but if the grounds of the motion are specified in writing, all grounds for new trial not set forth in such written grounds are waived.

9. SAME—*what may be reviewed without any motion for new trial.* Decisions of the court, made in the progress of a trial, upon instructions, objections to evidence or other matters of law arising in the cause, if the exceptions thereto have been properly preserved by the bill of exceptions, may be assigned for error and reviewed by an appellate tribunal without any motion for new trial having been made, and they are not waived by the making of a motion for new trial without specifying the grounds of the motion.

10. SAME—*what rulings are reviewable without an exception to overruling of motion for new trial.* Rulings on the admission

of evidence and the giving of instructions, to which exceptions have been properly taken and preserved by the bill of exceptions, may be reviewed on appeal even though no exception was taken to the order overruling the motion for new trial, which specified as grounds therefor, among others, the admission of improper evidence and the giving of improper instructions. (Contrary expressions in *Railroad Co.* v. *Cauley,* 148 Ill. 490, *Railroad Co.* v. *Johnson,* 191 id. 594, *Railroad Co.* v. *Haselwood,* 194 id. 69, *Railroad Co.* v. *Schmitz,* 211 id. 446, and *Call* v. *People,* 201 id. 499, overruled.)

CARTER, J., specially concurring.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of McLean county; the Hon. C. D. MYERS, Judge, presiding.

BRACKEN, YOUNG & PEIRCE, (F. S. WINSTON, of counsel,) for appellant.

LIVINGSTON & BACH, for appellee.

Mr. JUSTICE DUNN delivered the opinion of the court:

This was an action on the case brought by appellee, against appellant, to recover damages for personal injuries. Judgment against appellant has been affirmed by the Appellate Court, and a further appeal is prosecuted to this court.

The gist of the various counts of the declaration is, that appellant failed to furnish appellee a safe place in which to work, and that the foreman, who was a vice-principal, ordered him into a dangerous place.

Appellee was engaged as one of a gang consisting of seven men, including Napoleon Fielder, the foreman, in removing two box-cars a distance of about forty feet north from their position near the freight depot, in Bloomington. The length of the cars was east and west, and one stood north of the other. They rested upon posts, the trucks having been removed, and were used by appellant's telegraph department for storing wire and other material. Cribbing was built of cross-ties nearly to the bottom of the cars,

which were then raised by jacks and railroad iron was placed upon the cribbing for a run-way. Upon this run-way rollers were placed, and the cars were then lowered until they rested upon heavy planking placed upon the rollers. The cars were then pulled to the places intended for them by blocks and tackle. The north car was moved and placed in its new position. The second car was then moved to its new position parallel with and near to the other car. The car was an old one, and there was evidence tending to show that some of its joints were loose and decayed. The weight of the load in the car was variously estimated from 10,000 to 20,000 pounds. There were a number of wooden cross-arms for telegraph poles, estimated to weigh 3000 pounds, on the roof of this car. A number of these had been taken by Fielder's direction from the roof of the first car when it was moved and piled on the roof of the second car. There was evidence that a suggestion was made to Fielder, before commencing to move the car, that these cross-arms should be removed, but that he said they were all right,—that he was an old house mover and the car was safe. The second car having been placed in position, it was raised on four jacks,—one at each corner,—about thirty-six inches from the ground, and the run-way and cribbing were removed. Appellee and his companion immediately blocked up the east end of the car where they were working, but Fielder ordered the blocking removed. Two beer kegs were then placed under the corners of the car at the west end, with a timber running across on top from one to the other. Two kegs were also set under the corners of the car at the east end, the one at the north-east corner near the first car being shorter than the other. In trying to put a timber under the car from one keg to the other Fielder knocked this shorter keg over, and then told appellee to go around and set the keg up and put a block on it. In order to do this it was necessary to go under the car or between the cars. The appellee went between the cars, and while engaged in

setting up the keg and putting the block on it, the car on the jacks fell and he was caught between the two cars and injured.

The evidence was conflicting, but there was evidence tending to prove the facts just stated. Whether the foreman stated that the car was safe; whether it was loose-jointed and top-heavy; whether it was reasonably safe to raise it on the jacks without blocking more closely; whether appellee was ordered to set up the beer keg and put the block on it; whether it was negligence to give such order, and whether, if it was given, appellee, under the circumstances, assumed the risk in obeying it, were all questions of fact. The case was therefore properly submitted to the jury, and its verdict and the judgment of the Appellate Court conclude all such questions. While the requirement that the master shall furnish his servant a safe place in which to work must be considered in connection with the fact that the work was necessarily attended with some danger, yet it is the duty of the master to use reasonable care to see that the servant is not unnecessarily exposed to danger in doing his work. If the master negligently gives an order, in obeying which the servant is exposed to danger which he would not otherwise have encountered, the master may be held liable for an injury suffered by the servant.

It is assigned for error that the appellee was permitted to introduce in evidence the opinions of witnesses as to whether the method of raising the car was reasonably safe. Opinion evidence is admissible only upon subjects not within the knowledge of men of ordinary experience, and upon the ground that the facts are of such a nature that they can not be presented in such a manner that jurors of ordinary intelligence and experience in the affairs of life can appreciate them in their relations and comprehend them sufficiently to form accurate opinions and draw correct inferences from them on which to base intelligent judgments. The opinions of witnesses should not be received as evidence where all

the facts on which such opinions are founded can be ascertained and made intelligible to the jury. (*Linn* v. *Sigsbee,* 67 Ill. 75; *City of Chicago* v. *McGivin,* 78 id. 347; *Pennsylvania Co.* v. *Conlan,* 101 id. 93; *Hopkins* v. *Indianapolis and St. Louis Railroad Co.* 78 id. 32.) The subject matter of inquiry here is not of such a character that only persons of skill and experience in it are capable of forming a correct judgment about it. There was no complicated machinery, no question of science or skill. If the expert witness did not know all the facts his opinion would be only a guess. If he did know them, they could be detailed to the jurors and they would be as competent to form an opinion as the witness. This evidence should not have been allowed to go to the jury.

The following instruction was given to the jury at the instance of the plaintiff:

"You are instructed that if you believe, from the evidence, that Napoleon Fielder was not a fellow-servant of the plaintiff and that he was the representative of the defendant company, with full authority to command and control the men and the work in question, and that said Fielder represented to the plaintiff that the car in question was safe, and that this representation was made within his authority as representative of the defendant, and that said plaintiff relied upon such representations, and that the plaintiff, in so doing, was in the exercise of reasonable care and caution for his own safety, and if you further believe, from the evidence, that the car in question was not reasonably safe or was not reasonably secure, and that the injury resulted to the plaintiff because the car was not reasonably safe or because the car was not reasonably secure, then plaintiff can not be charged, in this case, with contributory negligence."

It is insisted that this instruction is erroneous because there was no evidence on which to base it, because it was not limited as to the time when the representation was made, and because it permitted the appellee to recover without

proof that Fielder knew that the car was not reasonably safe and secure. The testimony of the appellee, Million and Powell tends to prove that Fielder stated that the car was safe when they began to move it, but his statement did not refer to its condition at the time appellee was hurt. This instruction ought not to have been given.

The fifth instruction is as follows:

"You are instructed that if you believe, from the evidence, that Napoleon Fielder was not a fellow-servant of plaintiff, but was a foreman, with full power and authority to control the movement of the men employed at the work in question, and that he had full authority to direct and control the manner of doing said work, and that said Napoleon Fielder did, within his authority, order the plaintiff to work in a dangerous place or perform the work in a dangerous manner, that then and in that event the plaintiff did not assume the hazard or risk of obedience unless the danger was so imminent that a man of ordinary prudence would not have incurred the risk or hazard."

It is urged against this instruction, as against the third, also, which has just been considered, that it authorized a recovery without proof of Fielder's knowledge of the danger, and the case of *Swiercz v. Illinois Steel Co.* 231 Ill. 456, is cited in support of this claim. This arises from a misapprehension. The instruction in that case purported to state the elements necessary to a recovery and dealt with the defendant's negligence in giving the order, a necessary ingredient of which negligence, it was said, was knowledge of the danger. The instruction here does not purport to state the elements necessary to a recovery. It does not deal with the defendant's negligence, but refers only to assumed risk. It was intended to advise the jury only on that point, and it stated the law correctly. A servant does not assume the risk of obedience to an order which exposes him to unusual or unnecessary danger unless the danger is so imminent that a man of ordinary prudence would not have in-

curred it. *Illinois Central Railroad Co.* v. *Sporleder,* 199 Ill. 184.

It is objected to the fourth instruction given on behalf of appellee that it does not state that the care required of the plaintiff should have been exercised at the time of and immediately prior to the accident, but we do not think the jury could have misunderstood the time when such care was required.

Complaint is made of the refusal of appellant's fourth, eighth, ninth and thirteenth instructions. These were intended to advise the jury that if appellee's injury was the result of a mere accident or the negligence of a fellow-servant he could not recover. They omit, however, all reference to the fact that he claims to have been negligently ordered by his superior into a place of danger when he was injured, and the law is well settled that a defendant is liable for an injury caused by the defendant's negligence concurring with an accident or the negligence of a fellow-servant, without which the injury would not have occurred. *Armour* v. *Golkowska,* 202 Ill. 144; *Hansell-Elcock Foundry Co.* v. *Clark,* 214 id. 399.

It is contended by the appellee that the record does not show an exception to any ruling of the court upon the admission of evidence, but this claim is a mistake. Without regard to the question whether objections were properly made and exceptions properly preserved in every instance, the questions asked of several of the witnesses who were examined as experts were objected to specifically, on the ground that the matters inquired of were not subjects of expert testimony, and to the decisions of the court overruling the objections exceptions were properly preserved.

It is also contended that no error concerning the admission of evidence or the giving of instructions can be insisted upon, because no exception was preserved to the order of the court overruling the appellant's motion for a new trial. Conceding that no exception was preserved to the order

overruling the motion for a new trial, exceptions were preserved to the giving and refusal of instructions and the admission of evidence, and the action of the court in these respects is therefore open to review. In order to bring the question of the sufficiency of the evidence to sustain the verdict before this court for review it is necessary for the losing party to make a motion for a new trial, and, upon its being overruled, to except to such ruling, and to include such motion, the order overruling the same, and his exception thereto, together with the evidence, in the bill of exceptions; but the propriety of giving or refusing instructions or the admission or rejection of evidence where the rulings of the court thereon have been excepted to and incorporated in the bill of exceptions has always been subject to review, regardless of the fact that. no motion for a new trial was made. (*Illinois Central Railroad Co.* v. *O'Keefe,* 154 Ill. 508.) In a number of the later decisions of this court it has been held that it is necessary, before an appellate court can consider any question of the admission or sufficiency of evidence or error in giving or refusing instructions, that a motion for a new trial should have been made and overruled and an exception preserved to the order overruling that motion. Among the cases so holding are *East St. Louis Electric Railroad Co.* v. *Cauley,* 148 Ill. 490; *Illinois Central Railroad Co.* v. *Johnson,* 191 id. 594; *Chicago, Burlington and Quincy Railroad Co.* v. *Haselwood,* 194 id. 69; *Chicago and Eastern Illinois Railroad Co.* v. *Schmitz,* 211 id. 446; *Call* v. *People,* 201 id. 499.

Such ruling is a departure from the practice of the common law, to which the motion for a new trial was originally unknown. The writ of error issued out of chancery was a commission to the judges named in it to examine the record and to affirm or reverse the judgment according to law. No writ of error lay for an error in law not appearing upon the face of the record, and therefore, where a

party alleged anything *ore tenus* which was overruled by the judge, this could not be assigned for error. There was no bill of exceptions, and therefore no ruling on the admission or rejection of evidence, error in the charge of the court, or objection of any kind arising on the trial, could be alleged for error because it did not appear on the record, and so the party aggrieved had no remedy. The law was amended in this respect by the statute of Westminster 2, (13 Edw. I, chap. 31,) which provides that "when one impleaded before any of the justices alleges an exception, praying they will allow it, and if they will not and he that alleges the exception writes the same and requires the justices will put to their seals, the justices shall so do, and if one will not another shall; and if, upon complaint made of the justices, the king cause the record to come before him, and the exception be not found in the roll, with the seals of the justices thereto put, the justice shall be commanded to appear at a certain day either to confess or deny his seal, and if he cannot deny his seal they shall proceed to judgment according to the exception, as it ought to be allowed or disallowed." Bacon's Abridgment, Bill of Exceptions; Raymond on Bill of Exceptions, 31 Law Library.

The bill of exceptions was upon a matter of law arising on the trial and not upon any question of fact, and judgment was required to be given on the writ of error according to the exception as it ought to be allowed or disallowed. But no question of fact could be drawn into examination again by a bill of exceptions. The common law processes for reviewing judgments do not draw into question any fact which has been already pronounced upon,—they aim only to correct errors of law. The motion for a new trial was not only unnecessary, it was practically unknown. The method of challenging the verdict of the jury was by writ of attaint, under which a jury of twenty-four was summoned to determine whether the first jury had sworn falsely in giving their verdict. If the verdict was found to be

false, the jurors were condemned to perpetual infamy, for-
feiture of goods, imprisonment, and other severe punish-
ments.   (3 Blackstone's Com. 402.)   It was not until the
middle of the seventeenth century that the practice of grant-
ing new trials upon motion began to prevail, the first case
of a new trial granted upon the merits being *Wood* v. *Guns-
ton,* Style, 466.   (3 Blackstone's Com. 388; Hilliard on
New Trials, 4.)   The object of the motion for a new trial
was not to review any error of law committed by the court,
but was to review the question of fact as found by the jury.
The granting or denial of the motion was entirely discre-
tionary with the court.   No exception could be taken to the
decision thereon nor could it be assigned for error.   In the
courts where the practice in this respect has not been modi-
fied by statute this is still so.   In the Federal courts the ap-
pellate tribunal will not look into the evidence to determine
whether or not it sustains the verdict.   *Barr* v. *Gratz,* 4
Wheat. 213; *Blunt's Lessee* v. *Smith,* 7 id. 248; *Hender-
son* v. *Moore,* 5 Cranch, 11; *Marine Ins. Co.* v. *Young,*
id. 187; *Home Ins. Co.* v. *Bartoro,* 13 Wall. 603; *Terre
Haute and Indianapolis Railway Co.* v. *Struble,* 109 U. S.
381; *Kearney* v. *Snodgrass,* 12 Ore. 311; *Miller* v. *Baker,*
20 Pick. 285; *Burd* v. *Dunsdale,* 2 Bin. 90.

The law, then, in the absence of any statute, did not
authorize the taking of an exception to the overruling of a
motion for a new trial, and the practice in this State was
in accordance with this rule until the passage of the act of
June 21, 1837, (Laws of 1837, p. 109,) section 2 of which
authorized exception to be taken to the overruling of mo-
tions for new trials and the assignment of error on any
opinion so excepted to.   Before that time this court uni-
formly held the granting or refusing a new trial a question
to be determined in the sound discretion of the court to
which the application was addressed and a refusal to be no
ground of error.   (*Clemson* v. *Kruper,* Beecher's Breese,
210; *Collins* v. *Claypole,* id. 212; *Street* v. *Blue,* id. 261;

*Adams* v. *Smith,* id. 283; *Vernon* v. *May,* id. 294; *Harmison* v. *Clark,* 1 Scam. 131; *Johnson* v. *Moulton,* id. 532.) In *Smith* v. *Shultz,* 1 Scam. 490, (decided after the passage of the act of 1837,) the court said, referring to an assignment of error on the overruling of a motion for a new trial: "At common law the decision of a court upon an application addressed to its discretion cannot be assigned for error, and such has been the uniform decision of this court. But by an act of the legislature this principle of the law has been changed, and an appeal will now lie from the decision of a court refusing an application for a new trial." But the right of exception in this case being entirely statutory, the order of a court granting a new trial is still, as at common law, not reviewable, because the statute allows exceptions only to the overruling of motions for new trials. *Brookbank* v. *Smith,* 2 Scam. 78.

The statute of 1837 applied only to civil cases, and the practice in criminal cases remained as at common law until the passage of an act in 1857, giving the same right in criminal as in civil cases to except to the denial of a motion for a new trial. (Laws of 1857, p. 103.) Therefore, prior to 1857 this court always refused to examine the evidence in criminal cases as to its sufficiency to sustain the verdict, because that question was wholly within the discretion of the trial court. *Pate* v. *People,* 3 Gilm. 644; *Holliday* v. *People,* 4 id. 111; *Martin* v. *People,* 13 Ill. 341.

Since the granting or denial of a new trial was discretionary and no exception could be taken thereto prior to the statute, the matters properly included in a bill of exceptions were not affected by the motion for a new trial. After the passage of the act authorizing exception to be taken to the overruling of a motion for a new trial, the practice in regard to questions brought into the record by bills of exception was not changed. The consideration of such questions did not at all depend upon a motion for a new trial, but the court continued to review the rulings

upon evidence and instructions made at the trial and appearing in the bill of exceptions, in the absence of any motion for a new trial. In *Pottle* v. *McWorter,* 13 Ill. 454, a motion for a new trial was made and denied but no exception was taken. The bill of exceptions contained all the evidence, which was wholly insufficient to sustain the verdict, but the court would not review the decision on the motion. It did, however, review the decision of the court on the admission of evidence shown by the bill of exceptions and reversed the judgment. In *McClurkin* v. *Ewing,* 42 Ill. 283, the denial of the motion for a new trial was not preserved as a part of the bill of exceptions. The court therefore refused to review the evidence, but held that the instructions to the giving of which exceptions were preserved were properly before the court for consideration. Such, also, was the case of *Boyle* v. *Levings,* 28 Ill. 314. In *Smith* v. *Gillett,* 50 Ill. 290, and *Drew* v. *Beall,* 62 id. 164, the decisions of the court upon questions of evidence were reviewed though there was no motion for a new trial, the court in the former case citing *Hayward* v. *Ormsbie,* 11 Wis. 3, where the rule is laid down that the court will not review the evidence in the absence of a motion for a new trial and an exception preserved, but will look at the instructions given to the jury.

It thus appears that the rule announced in the later cases above cited, and others, that a motion for a new trial is necessary to preserve for review rulings upon the evidence and instructions duly excepted to, is out of harmony with the principles of the common law and the earlier practice of our courts. The statute has, however, modified, to some extent, the common law practice in regard to the method of review by bill of exceptions. What is now section 77 of the Practice act has been in force in its material parts, substantially as at present, since 1827. It directs the party moving for a new trial to file the points in writing, particularly specifying the grounds of his motion. We have

held that this section is directory, and not mandatory. The party moving for a new trial may be required by the court or the opposite party to file the points in writing, specifying the grounds of his motion. If this is not required and the motion is submitted without any statement in writing of the grounds therefor and without objection, the requirement of such statement is waived. If certain points in writing particularly specifying the grounds of a motion for a new trial have been filed, the party will be deemed to have waived all causes for a new trial not set forth in his written grounds and in the appellate court will be confined to the reasons specified. On the other hand, if the motion has been submitted without specifying, in writing, the grounds therefor, the party may avail himself of any cause for a new trial which may appear in the record, whether it be the admission or rejection of evidence, the giving or refusal of instructions, the lack of sufficient evidence or any error occurring on the trial. (*Ottawa, Oswego and Fox River Valley Railroad Co.* v. *McMath,* 91 Ill. 104; *Consolidated Coal Co.* v. *Schaefer,* 135 id. 210; *Hintz* v. *Graupner,* 138 id. 158; *Brewer Brewing Co.* v. *Boddie,* 162 id. 346; *Bromley* v. *People,* 150 id. 297; *Chicago, Paducah and Memphis Railroad Co.* v. *Goff,* 158 id. 453; *Landt* v. *McCullough,* 206 id. 214; *Kehl* v. *Abram,* 210 id. 218.) As was said in *West Chicago Street Railroad Co.* v. *Krueger,* 168 Ill. 586, these cases are, however, to be distinguished from those cases in which no motion for a new trial was made, as in *Illinois Central Railroad Co.* v. *O'Keefe,* 154 Ill. 508, and cases there cited. In a very recent case, while it was stated that the rule is firmly established that when a motion for a new trial is made and the points relied on stated therein all other points are thereby waived, it was carefully stated that errors in giving or refusing instructions, when exceptions have been properly taken, are saved without a motion for a new trial. *Chicago City Railway Co.* v. *Smith,* 226 Ill. 178.

Under the practice in this State, decisions of the court made in the progress of a trial upon instructions, objections to evidence, or other matters of law arising in the cause which have been incorporated in a bill of exceptions, may be assigned for error and reviewed by an appellate court without any motion for a new trial. They are not waived by making a motion for a new trial if such motion is submitted without any points stated in writing. But if a motion is made for a new trial and the grounds thereof are stated in writing, the party is limited to those reasons and all other errors are deemed to have been waived. In this case a motion for a new trial was made, specifying the grounds thereof, among others the admission of improper evidence and the giving of improper instructions. The exceptions taken to the decision of the court in these particulars were therefore not waived and are available to the appellant, whether exception was taken to the order overruling the motion for a new trial or not.

For the errors indicated the judgments of the Appellate Court and the circuit court will be reversed and the cause remanded to the circuit court for a new trial.

*Reversed and remanded.*

Mr. JUSTICE CARTER, specially concurring: I think that this case should be reversed, but I do not agree that the jurors were as competent to form an opinion on the question of the proper method of raising the car as witnesses who were experienced in that character of work. The best method of doing the work here in question does not, in my judgment, come within the knowledge of men of ordinary experience, and for that reason I think the evidence on this point was properly admitted. I do not disagree with the rules of law laid down in the foregoing decision, but with their application to the special facts in this case.