## Charles Keefe, Appellee, v. Armour & Company, Appellant.

## Gen. No. 17,038.

1. MASTER AND SERVANT—*oil tank car.* It is negligence on the part of the owner of an oil tank car to order an employe to test such tank, which is in a weak condition, with air pressure, when there is stearin therein.

2. MASTER AND SERVANT—*assumption of risk.* An employe does not assume the risk of dangers known to the employer or which, by the exercise of reasonable care, could have been known by the employer, or which could have been avoided by the employer and which are unknown to the employe.

3. MASTER AND SERVANT—*assumption of risk.* Where one employed as a boilermaker is ordered to repair an oil tank, the walls of which are lined with stearin, he does not assume the risk of explosion, resulting from chemical action produced by air pressure used in testing the tank, on the stearin, when he did not know of such risk.

4. EVIDENCE—*admissibility of custom.* In an action to recover for injuries sustained as a result of the explosion of an oil tank while it was being tested, it is not reversible error to permit the plaintiff to introduce evidence as to the customary way to test tanks, where the defendant first introduced the subject on cross-examination and later·produced the same kind of evidence on the defense.

5. EVIDENCE—*expert testimony.* A trial judge does not abuse his discretion by permitting expert witnesses to be asked, in a suit to recover for injuries sustained by explosion of an oil tank, whether the application of air into the tank was reasonably safe or not.

6. APPEAL AND ERROR—*harmless error.* Where a person offering an instruction is not injured by its refusal he cannot assign error thereon.

7. INSTRUCTIONS—*basis on evidence.* An instruction on the effect of latent or hidden defects is properly refused where there is no evidence on which to base it.

Appeal from the Superior Court of Cook county; the Hon. BEN M. SMITH, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1910. Affirmed. Opinion filed July 9, 1912.

A. R. URION and A. F. REICHMANN, for appellant.

JOHNSON & BELASCO, for appellee.

MR. JUSTICE F. A. SMITH delivered the opinion of the court.

This action was brought by the plaintiff, Charles Keefe, appellee, against defendant, Armour & Company, appellant, to recover damages for personal injuries sustained by him while in the employ of defendant.

The plaintiff, previous to the injuries sued for in this action, was in the employ of the defendant for three or four weeks as a boilermaker. The defendant's foreman, John Burns, on the day of the accident, November 18, 1908, told the plaintiff that there was a car standing out on the track that had lost 400 or 500 pounds of grease when it had last been filled, and ordered plaintiff to go out and work on the tank. Burns further told the plaintiff to go to the tool room and get a hose and rigging for testing tanks, connect it up and put on the air pressure. He also told the plaintiff that he would find a can of soap suds to swab the seams with, and directed him to find out where the leaks were and caulk them up. Thereupon the plaintiff with his helper, Adcock, did as he was ordered. When the air pressure got to thirty-eight pounds, it was shut off. Plaintiff then took a hammer and tested the rivets to find if any were broken. Burns, the foreman, came along about this time and took the hammer from the plaintiff and personally went over the rivets. Burns also examined the indicator on the gauge and learned that there was thirty-eight pounds pressure in the tank, and then told the plaintiff to go ahead and caulk it. While the plaintiff was caulking the seams with a caulking tool in one hand and a hammer in the other, or before he commenced caulking, the head of the tank blew out with a loud report, striking

the plaintiff and another employe, one Surma, killing Surma and injuring the plaintiff. The force of the explosion was sufficient to throw the head of the tank against an adjoining box car, knocking it in and thence flying off a distance of 100 or more feet to the top of an elevated structure.

The case was tried on the second and third counts of the original declaration, and the second and third additional counts. The second count of the declaration avers negligence of the defendant in inspecting the tank in question to ascertain whether or not it was reasonably safe to withstand the pressure, and negligence in permitting and allowing air to be pumped into the tank under pressure, while the tank was in an unsafe and dangerous condition, and while the strength of the tank was such that it could not stand the pressure without exploding.

The third count of the declaration alleges negligence of the defendant in ordering the plaintiff to fill the tank with air at a high pressure while the tank was in an unsafe and dangerous condition and not reasonably strong enough to hold the air pressure.

The second additional count avers negligence of the defendant in placing air in the tank while there were certain gases therein, thereby making the tank unsafe and dangerous and likely to explode.

The negligence averred in the third additional count is that the defendant negligently ordered the plaintiff to use a certain caulking tool to caulk seams in the tank of the car while it was in an unsafe and dangerous condition, and likely to explode from explosive gases contained therein.

It is urged on behalf of appellant that the evidence in the case is insufficient to show that the defendant, appellant, was guilty of actionable negligence, and, in any event, the great preponderance of the evidence is against the theory of negligence upon which plaintiff sought to recover; and that the court, therefore, erred

in refusing to take the case from the jury on the motion of defendant at the close of all the evidence. The argument in support of this proposition is that the theory upon which the plaintiff's case was brought was that a certain amount of soap stock, or stearin, adhered to the inside walls of the tank, and that this gave off and generated a gas under an air pressure of thirty-eight pounds to the square inch, and that that gas was capable of being ignited and exploded by a spark from a caulking tool. Appellant urges that appellee's case rests upon a spark being ignited by the caulking tool and coming into contact with the gas in the tank formed by the grease, or stearin, adhering to the walls of the tank and caused same to explode. From an examination of the evidence we are of the opinion that this is not a correct conception of the theory of the plaintiff's case. We do not think that the creation of a spark by the caulking tool and that the spark in some way ignited the gas in the tank is a necessary part of the plaintiff's case. The evidence shows, in our opinion, that after the tank was filled with air, creating a pressure of thirty-eight pounds to the square inch, this pressure of air upon the grease and stearin in the tank created an explosive gas, which, in addition to the pressure of air caused the tank to explode. We think the evidence abundantly sustains this theory of the case. It is clear from the evidence that the pressure of air alone did not cause the explosion. For a little time after the pressure of thirty-eight pounds had been created and the air pressure shut off, the tank did not explode, although both the plaintiff and Burns, the foreman, were engaged in hammering the rivets. After the air had acted upon the grease and stearin with which the walls of the tank were lined, the explosion occurred. The evidence shows, we think, that the defendant was guilty of negligence in ordering the plaintiff to test the tank with air pressure with stearin in the tank, and while the tank was in a weak and unsafe condition.

A further ground of reversal is urged in that the plaintiff failed to prove that he did not assume the risk of the work in which he was engaged, and that on the contrary the evidence shows that he did assume the risk. With this contention we cannot agree. It is a fundamental proposition that a servant assumes only such risks as are usually incident to his employment and any extraordinary hazards of which he has notice or which by the exercise of his faculties he could have noticed; but he does not assume the risk of danger known to the master or which, by the exercise of reasonable care, could have been known by the master, or which could have been avoided by the master and were unknown to the servant. Mann v. Illinois Central R. R. Co., 236 Ill. 30. The plaintiff knew nothing of the dangerous condition of the tank, neither as it existed physically or because of the stearin and grease with which its walls were lined. The plaintiff was not a chemist; he did not know that the pressure of air upon the substance with which the tank was lined would produce gases or cause an explosion. He had simply been informed that it had leaked when in use. He knew nothing of its structural weakness. The plaintiff had never seen this car before. He was simply ordered by the foreman to get the appliances and connect them up for the purpose of producing air pressure in the tank. After the pressure had reached thirty-eight pounds to the square inch, Burns, the foreman, took a hammer and, together with the plaintiff, swabbed the rivets to ascertain the leaks. Burns saw the indicator on the air pressure gauge, and knew the amount of pressure then in the tank, and directed the plaintiff to go ahead and caulk it. The defendant did know or ought to have known that heated air introduced into the tank lined with stearin and grease at a pressure of thirty-eight pounds to the square inch, would tend to produce explosive gas. In our opinion, the plaintiff did not as-

sume the to him unknown risk and unusual hazard of the result of introducing air into the tank.

It is urged that the court committed reversible error in permitting witnesses to testify as to the customary way to test tanks. Three witnesses were offered by the plaintiff upon that question. The testimony of the witnesses was that the usual and customary way was to fill the tanks with water in order to ascertain the points of leakage.

The record shows that the evidence as to the customary method of testing tanks was first introduced by the defendant in the cross-examination of the witness Thompson, who was called by the plaintiff. On the cross-examination of the witness Adcock, called by the plaintiff, the same question was gone into by the defendant. Up to that time no attempt had been made by the plaintiff to show the usual and customary way of testing tanks. Thereupon the plaintiff called Mr. Houlihan, the City Boiler Inspector, who testified that the usual and customary way was the water test, and also the witnesses Conroy and Holland. Upon the close of the plaintiff's case, and while the defendant was introducing its defense, evidence was introduced as to the custom of testing tanks by the defendants. In our opinion, under these circumstances, the defendant cannot here complain that the court erred in admitting evidence on behalf of the plaintiff where it first introduced the subject on cross-examination, and then produced the same kind of evidence on the defense. The case was mutually tried upon that theory. Spring Valley Coal Co. v. Robizas, 207 Ill. 226; Consolidated Coal Co. v. Haenni, 146 Ill. 614; Funk v. Babbitt, 156 Ill. 408; Illinois Central R. R. Co. v. Prickett, 210 Ill. 140.

In the Prickett case last cited, an engineer was killed by the explosion of the boiler on the engine he was operating. In the course of its opinion, the court said at page 143:

"It was competent for the appellant company to prove the general custom of well regulated and pru-

dently managed railroad companies with reference to the time and manner of making inspections of their engines and boilers. The objection was therefore properly sustained to the question propounded by appellant's counsel, viz.: 'What was the usual time of railroad companies for inspecting engines?' The inquiry should have been limited to the custom of well regulated and prudently managed companies.''

In Illinois Central R. R. Co. v. Sporleder, 199 Ill. 184, it was held proper to show the usual way in which spikes are drawn from a tie and that the usual way was to lift the spikes with a claw-bar, and that when the spike is so imbedded in the tie that the prongs of the claw-bar could not be readily forced under the head of a spike, the wood around the spike should be removed with an adz so that the prongs would firmly take hold of the neck of the spike. To the same effect is the case of Kennedy v. Swift & Company, 234 Ill. 606; Pittsburg Bridge Company v. Walker, 170 Ill. 550, and Franey v. Union Stock Yards Company, 235 Ill. 522. Many other cases are cited in the briefs in support of the introduction of custom, but we think it unnecessary to cite them. In our opinion the court did not err in admitting the testimony.

We do not think that it was an abuse of the discretion on the part of the trial judge to permit expert witnesses to be asked and to answer questions in substance whether the application of air into the tank was reasonably safe or not. While the question may have been bad in form in calling for an opinion upon an ultimate fact, yet had the witness been asked, as he properly might have been, what would the effect be of the introduction of such air pressure under such circumstances he undoubtedly would have answered an explosion. It is plain, therefore, that such a proceeding was unsafe. There was no question in the case but that the tank exploded, and all the facts and circumstances connected with the explosion and preceding it were before the jury. It was still a question for the

jury as to whether the defendant was guilty of negligence under the facts shown in the evidence. Stephen v. Duffy, 237 Ill. 549; Davis v. Collieries Co., 232 *id.* 284; Ardesco Oil Company v. Gilzon, 63 Pa. St. 146; Goddard v. Enzler, 222 Ill. 462; Koshinski v. Illinois Steel Co., 231 Ill. 198; Gundlach v. Schott, 192 Ill. 509.

In our opinion the witnesses who testified as experts were qualified and competent to testify to the opinions expressed by them.

The fourth instruction given at the request of the plaintiff on the question of assuming the risk is criticised by appellant. This instruction is, we think, justified by Mann v. Illinois Central R. R. Co., *supra.*

Complaint is also made of the third instruction given at the request of the plaintiff, upon the question of the duty of the master to exercise reasonable care to furnish the servant with a reasonably safe place to work. This instruction in our opinion is authorized by Donk Bros. Coal Co. v. Thil, 228 Ill. 233. We do not think it was foreign to the issue in the case or that it was designed or calculated to mislead the jury to the defendant's prejudice. Schillinger Bros. Co. v. Smith, 225 Ill. 74, is also authority for the instruction.

It is further urged that this instruction was erroneous and prejudicial because one of the questions in the case was whether plaintiff's fellow-servant, Adcock, had been negligent in failing to discover the condition of the interior of the tank and the danger of applying the amount of air pressure adopted. Adcock was not a chemist; he had no reason to know the chemical effect of air pressure upon the stearin and grease in the tank. There is no evidence in the case tending to show that he was guilty of negligence. This, in our opinion, also answers the contention that the court erred in denying defendant's refused instructions 33, 34 and 35, upon the question of the negligence of Adcock as a fellow-servant of the plaintiff.

It is also urged that the court erred in refusing the

fortieth instruction asked by the defendant in relation to the structural condition of the tank and the introduction of compressed air therein, and it is urged that if the accident happened simply because of the degree of pressure applied without the explosion of gases, the plaintiff assumed the risk, and could not recover. We cannot agree with the contention of appellant in this respect. Appellant was not injured, in our opinion, by the refusal of the instruction.

Appellant further urges that the court erred in refusing defendant's forty-fifth instruction to the effect that if the jury believed from the evidence that the sole proximate cause of the breaking of the tank was a latent or hidden defect, which could not have been known to the defendant by the exercise of ordinary care in time to prevent the accident in question, then the plaintiff cannot recover, and the verdict should be not guilty. This instruction was covered by other instructions given for the defendant, notably instruction 15. Furthermore, the instruction is not based on the evidence in the case. The defendant knew that the tank in question was from fifteen to twenty years old, and there was no evidence offered by the defendant of any latent or hidden defect.

The record, we think, is free from reversible error, and the judgment of the trial court is affirmed.

*Affirmed.*