ELIAS MANN, Admr., Appellee, *vs.* THE ILLINOIS CENTRAL TRACTION COMPANY *et al.* Appellants.

*Opinion filed October 26, 1908.*

1. APPEALS AND ERRORS—*Supreme Court does not consider the sufficiency of the evidence.* In determining whether the trial court should have directed a verdict for the defendant in a personal injury case the Supreme Court does not consider the sufficiency of the evidence, and if there is any evidence fairly tending to prove the allegations of the declaration necessary to a recovery, the action of the trial court in refusing to direct a verdict will be upheld.

2. TRIAL—*when question of assumed risk is for jury.* Whether a motorman who had been running on an interurban railroad for three months knew that the main track at a stub-siding was overgrown with tall, grease-covered weeds and assumed the risk of his inability to stop the car because of the weeds crushing down upon the rails and rendering them slippery is a question for the jury, where the evidence shows the stub-switch was not his regular meeting point but that he had been ordered by defendants' dispatcher to stop there; that there was a heavy dew, which weighted the weeds on the track, and where it does not appear the motor-

man had any opportunity to learn of the condition of the track at that point except as he passed it on through trips, without stopping.

3. MASTER AND SERVANT—*a servant does not assume unusual risks of which he has no notice.* A servant does not assume the risks of dangers known to the master or which by the exercise of reasonable care should be known by the master or which can be avoided by the master by the exercise of reasonable care, provided such dangers are unknown to the servant and could not have been known to him by the ordinary exercise of his faculties.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Sangamon county; the Hon. JAMES A. CREIGHTON, Judge, presiding.

GRAHAM & GRAHAM, for appellants.

BROWN, WHEELER, BROWN & HAY, and HAMILTON & CATRON, for appellee.

Mr. JUSTICE FARMER delivered the opinion of the court:

This is an appeal from a judgment of the Appellate Court for the Third District affirming a judgment of the circuit court of Sangamon county for $2500, recovered by appellee in a suit for damages for the death of Earl Buehler, his intestate, alleged to have been caused by the negligence of appellants. The declaration contained one count, and averred that appellants were operating an electric railway upon which the cars were equipped with air-brakes; that appellants allowed grass and weeds to grow up along their track and between the rails; that when the grass and weeds became wet with dew they weighted down upon the track and were mashed upon the rails and made the stopping of the cars thereon difficult by making the rails slippery; that on the night of August 17, 1905, deceased, who was employed on said road as motorman, tried to stop his car and was prevented by the slippery condition of the rails caused by the weeds, and that his car collided with another car and so injured him that he died.

The deceased was in the employ of appellants as motorman from May 14 to August 17, 1905, and ran a car between Springfield and Carlinville. During this time he left Springfield each day at three, seven and eleven o'clock P. M. and arrived at Carlinville two hours later, except upon the last trip, when he usually went only as far as Thayer, a station about half way between Springfield and Carlinville, where he met a north-bound car coming from Carlinville. He would take charge of this car and surrender his car to the crew of the north-bound car, who would take it to Carlinville and he would return with the north-bound car to Springfield. Each motorman received his orders by telephone from a dispatcher at Springfield. On arriving at a stopping place the motorman would communicate with the dispatcher and receive orders for the movement of the car. On the night of his injury deceased left Springfield at eleven o'clock P. M. and ran his car to Thayer, the usual stopping place, making several stops on the way. At Thayer he communicated with the dispatcher, and, as the north-bound car was late, was directed to proceed to Virden siding and meet the north-bound car at that place. At Virden siding there is a stub-switch, connected at the south end with the main track. South-bound cars have the right of way, and it was the duty of deceased, upon his arrival at that place, to stop his car on the main track one hundred or two hundred feet north of the switch and wait until the north-bound car went into the switch. When this was done the crews exchanged cars. The south-bound car would proceed on the main track, and after passing the switch the north-bound car would return to the main track and proceed north to Springfield. Upon reaching Virden siding deceased did not stop his car north of the switch-point but proceeded south to a point about three hundred feet south of the switch, where his car collided with the north-bound car. It appears from the evidence that at the place of the accident the track was slightly down-

grade to the south; that the main track at Virden siding was overgrown with grass and weeds from twelve to eighteen inches high; that the grass and weeds were so high that they were made greasy by contact with the axles of the car, to which lubricating oil was applied, and that the wheels of the cars would crush the weeds and grass on the rails, and that there was a heavy dew on the night of the accident, and immediately after the collision there were crushed weeds and grass on the rails and the track was slippery and greasy. It is not shown at what point deceased applied the air to the brakes to stop his car at this switch, but when the conductor, who had been standing on the rear end of the car, stepped off at a point about two hundred feet south of the switch the air had been applied to the brakes, the wheels of the car were sliding on the rails and the car was moving at a speed of about twelve miles per hour and so continued for about one hundred feet, when it collided with the approaching north-bound car. The headlight on the north-bound car was burning, and from this point an approaching north-bound car could be seen for a distance of two or three miles. The force of the collision crushed in the vestibule of the south-bound car, knocked the front truck from under the north-bound car, broke its windows and vestibule, and its platform went over the platform of the car deceased was operating and crushed him, where he was found with his hand on the controller.

Appellants in their statement say they contend there is no evidence that deceased was exercising due care; that there is no evidence that the presence of weeds made it more difficult to stop the car or that the presence of weeds was the cause of the failure of deceased to stop his car; that there is no evidence appellants were guilty of negligence in permitting weeds to grow along their track, and that there is no evidence that the deceased did not have equal opportunity with appellants to know of the presence

23 6—3

of weeds and their effect upon stopping cars. In their argument appellants say they insist there was no sufficient evidence upon these questions to authorize a recovery. Much of their brief and argument is devoted to a discussion of the sufficiency of the evidence. It is well understood, of course, that in cases of this character, where there is any evidence fairly tending to establish the plaintiff's cause of action, its sufficiency is not open to inquiry in this court. It would not be profitable to either of the parties for us to set out in detail the substance of the testimony. We have examined it sufficiently to know that it fairly tended to prove the allegations of the declaration necessary to authorize a recovery, and we could say neither more nor less if we should take the pains to analyze the evidence. There was no conflict in the testimony. Appellants called but one witness, and the subject upon which he testified cannot be said to raise a conflict in the testimony. We may say, however, upon the question whether it should be held, as a matter of law, that deceased assumed the risk of injury from the negligence complained of in the declaration, the evidence shows that deceased had been in appellants' employment as a motorman for about three months prior to the accident, during which time he passed over the track at the place where he was injured several times each day. The evidence further shows that Virden siding was not the regular meeting place of cars operated by deceased, with other cars. The usual place was Thayer, but on account of the north-bound car being late on the night in question, deceased was ordered to meet the north-bound car at Virden siding. It is not shown that deceased had any other opportunity for knowing the condition of the track at Virden siding than such as could be observed in passing over it without stopping. The evidence also tends to show that a heavy dew tended to weight the weeds and grass down on the rails, and the evidence not showing that deceased had occasion to stop at Virden siding before, we think it

cannot be said, as a matter of law, that he was bound to know the condition of the weeds and grass on the track and the effect they would have when he attempted to stop the car. Under the evidence, whether he knew or should have known these things and assumed the risk of injury thereby, was a question of fact properly submitted by the court to the jury.

Objection is made to instructions 1 and 2 given on behalf of appellee. Instruction 1 informs the jury that it is the duty of the master to exercise reasonable care to furnish the servant a reasonably safe place in which to work. Instruction 2 is as follows:

"The court instructs the jury that a servant assumed only such risks as are usually incident to his employment and any extraordinary hazard of which he has notice or which by the reasonable exercise of his faculties he could have noticed, but he does not assume the risks of danger known to the master or which by the exercise of reasonable care should be known to the master, or which can be avoided by the master by the exercise of reasonable care, provided such dangers are unknown to the servant and could not have been known to him by the ordinary exercise of his faculties."

The complaint made of these instructions is, that they assume appellant failed to furnish deceased a reasonably safe place to work. This criticism appears to us without foundation. Both state the law correctly, the first one in abstract form, but it announces a rule of law that was applicable to the case.

We find no justification in this regard for reversal by this court of the judgment of the Appellate Court, and it is therefore affirmed.   *Judgment affirmed.*