## Alvin DeFrates, Appellee, v. Central Union Telephone Company, Appellant.

1. VARIANCES—*when objection comes too late.* An objection of variance which is not raised until the close of the plaintiff's evidence, comes too late and is thereby waived.

2. MASTER AND SERVANT—*when knowledge of defective appliances need not be established.* If the defect was one of construction rather than ensuing disrepair, the knowledge thereof in the master need not be affirmatively proved.

3. MASTER AND SERVANT—*when doctrine of assumed risk does not apply.* A servant is not chargeable with knowledge of latent defects not discernible by. tests applied by him; the servant is not required to search for latent defects and dangers arising from the original condition of the place to which he is sent to work and he

does not assume the risk of defects of which he has no knowledge or which he could not discover by the use of ordinary care and of which the master has or ought to have had knowledge.

Action in case for personal injuries. Appeal from the Circuit Court of Sangamon county; the Hon. JAMES A. CREIGHTON, Judge, presiding. Heard in this court at the November term, 1908. Affirmed. Opinion filed June 2, 1909.

W. B. MANN, CONKLING & IRWIN and DAVID K. TONE, for appellant.

T. J. CONDON and ALBERT SALZENSTEIN, for appellee.

MR. PRESIDING JUSTICE PUTERBAUGH delivered the opinion of the court.

In an action in case, appellee, DeFrates, recovered a judgment for $1,500 against the Central Union Telephone Company, appellant. The first count of the declaration charges that the defendant was the owner of and operating a telephone line near Peoria, Illinois; that the plaintiff was an employe of the defendant, and engaged in stringing, taking off and repairing wires on the defendant's lines; that on August 6, 1907, the plaintiff was ordered to and went on one of the defendant's poles for the purpose of taking off certain wires; that it became and was the duty of the defendant to use reasonable care to have furnished the plaintiff a reasonably safe pole upon which to stand and do said work, but that the defendant, neglecting its duty in that behalf, sent the plaintiff on a pole which was rotten and defective, of which condition the plaintiff did not know and in the exercise of ordinary care could not have known; that the plaintiff climbed said defective pole, and while removing said wires and in the exercise of ordinary care for his own safety, said pole broke and fell, by reason of which plaintiff was injured. The second count is substantially the same as the first count, except that it charges in addition that the defect in said pole "should have been known to the defendant in the exercise of reasonable care."

At the close of the plaintiff's evidence, counsel for the defendant requested the court to instruct the jury to find the defendant not guilty, because the declaration varied from the proof, in that it was therein charged that the plaintiff was directed by the defendant to climb the pole in question, whereas the proof showed that the plaintiff was merely directed to remove the wires from certain poles. This motion was denied; whereupon the defendant moved the court to direct a verdict for the defendant, which motion was also denied. Said motions were renewed at the close of all the evidence and again denied.

The evidence shows that during January, 1906, the defendant company for the purpose of furnishing telephone communication and service to one Keene, a farmer whose dwelling house was about two hundred and fifty yards south of the road upon which the defendant's main lead ran, caused three poles strung with wires to be set at intervals between said points. A short time thereafter for the purpose of raising the wires a fourth pole was placed between the one nearest the house and the house itself. In August, 1907, at the request of Keene, the defendant started to remove said poles and wires to another part of the premises so as to connect with another line of the defendant which ran along the east boundary of the farm. The plaintiff was at the time in the employ of the defendant, under the direction of the defendant's foreman, Woods. He testified in substance that he was directed by Woods to go to Keene's farm and take the wires off the original poles, whereupon he went to the place and first tested the fourth pole by shaking and jerking it, and then climbed it and untied the wires; that he then went to the third pole and after testing it in like manner climbed to the top, untied the wires, and then walked around on the pole to the other side, to which was attached a guy wire extending from the pole to a rail fence about twenty feet away, and that as he was about

to cut the guy wire the pole broke, throwing him to the ground, whereby the bone of his leg was fractured. The evidence as to whether the pole was defective as charged was conflicting. The jury doubtless found that it was, and we are not at liberty to disturb such finding, as there was sufficient evidence which, if credible, warranted the same. There was no evidence tending to show that the plaintiff was directed by the foreman to climb the particular pole in question, and it is insisted that the court erred in refusing to direct a verdict on the ground of variance. We are of the opinion that the question of variance, if any, was not so raised by appellant as to permit it to take advantage of the same. Had the specific objections been raised at the time the evidence as to what, in the way of direction, was said to appellee by the foreman, was introduced, appellee would have been afforded an opportunity to amend his declaration by striking out the allegation as to specific directions. The question was not raised until at the close of the plaintiff's evidence and must therefore be regarded as waived. City of Joliet v. Johnson, 177 Ill. 178; C. C. Ry. Co. v. McClain, 211 Ill. 589.

The evidence tends to show that the bottom of the pole in question was decayed and rotten, that such condition was latent, not patent, and that it was an old pole at the time it was planted upon Keene's premises by the employes of appellant; that appellee had never seen it prior to the time he climbed it, and that he shook the pole before climbing it and failed to discover its condition; that this was the usual method of testing poles, and that he had no other means at hand with which to investigate and determine its soundness. It further appears from the evidence that an inspector in the employ of appellant whose duty it was to inspect poles and make repairs, was at the Keene farm where the poles were, and that although the subject of removing them was under consideration he failed to examine the same.

It is insisted that the court erred in giving to the

jury plaintiff's first instruction which authorized them to return a verdict for the plaintiff without proof that the defendant knew, or, in the exercise of ordinary care, could have known of the defective condition of the pole in question. This is not a case where proof of such fact was essential. The jury was warranted in finding that the pole was defective when planted on the Keene farm, and the defendant, in law, must be held to have known of such condition. Had the pole been in reasonably good condition in the first place and became rotten and decayed from use and the ravages of time, a different rule would apply. The instruction required proof of the material allegations which included the negation of the assumption of risk by the plaintiff, and the court did not commit error in giving the same.

It is contended that the risk of injury from the defective pole was assumed by the plaintiff by virtue of his employment. It was the duty of the defendant to use reasonable care to furnish the plaintiff with a reasonably safe pole upon which to climb in the performance of his duties. Such implied duty arose from the contract of employment and existed without regard to custom. The pole, as has been said, was originally defective, and the defect was a latent one, not discoverable by the test applied by the plaintiff, which the jury was justified in finding was the only one which he, in the exercise of ordinary care, was required to make. He was not required to search for latent defects and dangers arising from the original condition of the pole, and did not assume the risk of defects of which he had no knowledge or which he could not discover by the use of ordinary care, and of which the defendant had or ought to have had knowledge (C. & E. I. R. R. Co. v. Heerey, 203 Ill. 492), and had the right to assume that the defendant had exercised reasonable care to see that the pole was reasonably safe for the use which the plaintiff in the regular line of his employment was expected and required to make of it.

Ehlen v. O'Donnell, 205 Ill. 38. The plaintiff therefore did not assume the risk of injury from the defective pole. Mann v. I. C. T. Co., 236 Ill. 30.

It is urged that the general rule that a master must exercise reasonable care to furnish a reasonably safe place for his servant to work does not apply, because the plaintiff was engaged in dismantling and removing the poles and wires. The facts in the case do not bring the same within the exception to the rule. It is well known to all that in the maintenance of telegraph, telephone and similar systems, it is necessary for employes frequently to climb the poles upon which wires are strung for the purpose of repairing, adjusting and changing the position of the wires. It is obvious that the fact that it was ultimately intended in the present instance to remove the pole to another location, did not take the case without the general rule as to the rights and duties of the parties.

The foregoing views are, we think, decisive of the remaining questions raised and argued by the defendant. The record is free of prejudicial error and the judgment will be affirmed.

*Affirmed.*