EDMUND STEPHEN, Admr., Appellee, vs. JOSEPH J. DUFFY, Appellant.

*Opinion filed December 15, 1908—Rehearing denied Feb. 4, 1909.*

1. MASTER AND SERVANT—*when the question of master's negligence is for the jury.* Where the evidence shows that if, in exploding dynamite in rock excavation work, but a single row of holes had been charged and fired instead of charging and firing four rows at a time, an inspection of the broken rock would have disclosed whether the charge in any hole had not exploded, the question whether this method should have been followed by the contractor in the exercise of reasonable care to provide his shovelers with a reasonably safe place in which to work is for the jury.

2. SAME—*fact that dynamite is dangerous should be considered in determining the question of contractor's care.* In determining whether the exercise by a contractor of reasonable care to provide his shovelers a reasonably safe place in which to work required the use of a slower and more expensive method of blasting with dynamite than the method adopted, weight must be given to the fact that dynamite is a powerful and dangerous force, requiring care in its use commensurate with the danger.

3. SAME—*what is not an ordinary risk incident to employment as cranesman on steam shovel.* The danger arising from an explosion of a charge of dynamite which had failed to explode when the other charges were fired, several days before, is not an ordinary risk incident to the employment of a cranesman, whose duties are to assist in the operation of a steam shovel engaged in removing broken rock.

4. EVIDENCE—*when expert testimony is properly admitted.* Testimony of witnesses skilled by long experience in blasting rock, to the effect that defendant might have employed a different method of blasting, by which an inspection of the broken rock after the blast would have revealed the existence of any charge which had missed fire, is proper, even though, in the particular case in question, the broken rock was, in fact, inspected after the blast and no charge which had missed fire discovered.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Will county; the Hon. DORRANCE DIBELL, Judge, presiding.

This is an appeal by Joseph J. Duffy from a judgment of the Appellate Court for the Second District affirming a judgment for the sum of $5000 recovered by Edmund Stephen, administrator of the estate of Alfred Oestry, deceased, appellee, in the circuit court of Will county, against appellant, for damages for the death of appellee's intestate, alleged to have been caused through the negligence of the appellant. To the suit Joseph J. Duffy and M. J. Scanlon, co-partners as J. J. Duffy & Co., and the Joseph J. Duffy Contracting Company, a corporation, were made defendants. The jury were instructed that there was no evidence tending to establish any liability as to any of the defendants except appellant, and they were also instructed to disregard each of the counts of the declaration except the first, second and third.

The first count alleges, in substance, that defendants, on December 23, 1904, were engaged in the business of excavating and removing stone and other material from the drainage channel of the Sanitary District of Chicago, in Will county, Illinois, and that in the prosecution of said work the defendants drilled holes in the natural ledge of rock and placed therein dynamite for the purpose of exploding the same to break and loosen the rock so that it might be removed from said channel by means of a steam shovel, which was operated by the deceased under the direction of an engineer; that it was the duty of defendants to exercise reasonable care in placing and exploding the dynamite so that all of the dynamite would be exploded by the application of the electric current used for that purpose, and that it was their duty to withdraw from the stone any dynamite not so exploded before the deceased engaged in the removal of the blasted stone. The negligence charged in this count is, that the defendants carelessly and wrongfully prepared and placed said several charges of dynamite in the holes aforesaid without reasonably careful and proper connec-

tions, so that the dynamite was not all exploded by the electric current, and defendants did not use reasonable care to remove the unexploded dynamite before the shoveler on which deceased worked was placed in operation to remove this particular stone. It was averred that as a result of such negligence unexploded dynamite which remained in the mass of broken rock after the application of the current exploded and killed the deceased while he, in the exercise of due care, was assisting in removing the stone. The second count charges a negligent failure to inspect the stone after the explosion resulting from the application of the current, for the purpose of ascertaining whether all the dynamite had been exploded. The third count charges a negligent failure to provide for the deceased a safe place in which to work.

At the time of the accident appellant had in his employ a large force of men engaged in excavating a portion of the drainage channel of the Sanitary District of Chicago. The excavation, which was being made in solid limestone, was one hundred and sixty-two feet in width, extending across the channel, and about sixteen feet deep. The method of operation, which appears to have been the common one in use by contractors engaged in this sort of work, was first to make a channel, running lengthwise of the drainage channel, about two inches in width and sixteen feet deep along the outer line on each side of the proposed excavation. When the "channeling," as this work was called, was completed for a certain distance, from twenty-eight to thirty holes were drilled, in four rows, in the bench of rock. The rows were about eight feet apart and the holes in each row were the same distance from each other. Each hole was from twelve to fourteen feet deep. These holes were two inches in diameter, and after they were drilled light explosives were placed therein and fired to clean out the holes and make a small pocket at the bot-

tom in which to place the main charge of dynamite. After "springing the holes," as this operation was called, each hole was charged with from forty to fifty pounds of dynamite, and a small copper cap, known as the "exploder," attached to two small wires, was then inserted in and fastened to the last stick of dynamite placed in the hole. In order to prevent this cap from becoming damp the hole around the cap was filled with soap or some greasy substance. The wires running from each hole were then connected with a main wire leading to the power house, some distance away, and from this point the shots were all fired simultaneously by means of electricity. After the explosion the bench of rock in which the shots were placed would be broken up, and the pile of broken rock would be about four feet higher than the surface of the rock before the shots were fired. After the rock had been broken up in this manner it was loaded into cars by means of a steam shovel. The deceased was employed on the steam shovel as cranesman, and his duties consisted in directing the movements of the shovel. In order to do this he was compelled to stand within fifteen feet of the rock pile, upon the crane, which swung back and forth between the rock pile and the car. The rock which was being loaded at the time of the accident had been broken up in the manner indicated above, two or three days previous to that time. While the deceased was attempting to load the shovel, and while it was in contact with the stone in the mass, a terrific explosion occurred, by which he was so severly injured that he died on the following day. The proof indicates that this was an explosion of dynamite which had been placed in one or more of the holes prior to the application of the electricity and which had not been exploded by the current. It appears from the evidence that there was nothing on the surface of the broken stone to indicate that the dynamite which injured the deceased remained unexploded after the blasting was done, two or three days before.

At the close of all the evidence the court denied the motion of appellant for a peremptory instruction, and the action of the court in so doing has been assigned as error. Appellant also contends that the court erred in passing upon objections to evidence offered.

J. L. O'DONNELL, and T. F. DONOVAN, (R. J. FOLONIE, of counsel,) for appellant:

Where an employee sues an employer to recover for injuries resulting from accident caused in the course of his employment by some defect of appliances he must trace some distinct fault to the master, and must show by the proof some specific state of facts from which the law raises a legal duty. *Glue Co.* v. *Wietzychowski,* 227 Ill. 338; 1 Bailey on Personal Injuries, secs. 1672-1674, *et seq.; Sack* v. *Dolese,* 137 Ill. 129; *Railroad Co.* v. *Reilly,* 212 id. 506; *Brossman* v. *Drake,* 232 id. 412; *Railway Co.* v. *Berry,* 46 L. R. A. 33; *Biscuit Co.* v. *Wilson,* 82 N. E. Rep. 916; *Wabash* v. *Locke,* 112 Ind. 404; *Traction Co.* v. *Giese,* 229 id. 264; *Dobbins* v. *Brown,* 119 N. Y. 188; *Mining Co.* v. *Kitts,* 42 Mich. 545; *Redmond* v. *Lumber Co.* 96 id. 545; *Nitroglycerine case,* 15 Wall. 524; *Kelly* v. *Cable Co.* 8 Mont. 440.

*Res ipsa loquitur* can never be invoked in a case by a servant against his master. *Railway Co.* v. *Dixon,* 139 Fed. Rep. 737; *Railway Co.* v. *O'Brien,* 132 id. 593; *Cryder* v. *Railway Co.* 152 id. 417; *Railroad Co.* v. *Swift,* 213 Ill. 307; *Glue Co.* v. *Wietzychowski,* 227 id. 338.

Where plaintiff's case rests upon presumptions he must negative all presumptions inconsistent with due care on the part of his master. *Condon* v. *Schoenfeldt,* 214 Ill. 226; *Shaw* v. *Railroad Co.* 77 Pac. Rep. 515; *Insurance Co.* v. *Gerisch,* 163 Ill. 625; *Kevern* v. *People,* 224 id. 170.

If the explosion complained of might be attributed to a fault of the manufacturer the appellant would not be liable. *Losee* v. *Buchanan,* 51 N. Y. 476; *Railway Co.* v. *Toy,* 91

Ill. 474; *Traction Co.* v. *Hampe,* 228 id. 346; *Condon* v. *Schoenfeldt,* 214 id. 226. .

The work in which plaintiff's intestate was employed caused constant changes in the working place and was destructive of the working place, and under such conditions no duty rests upon the master to furnish him a safe place in which to work. *Armour* v. *Hahn,* 111 U. S. 313; *Montgomery* v. *Robertson,* 229 Ill. 466; *Cullen* v. *Norton,* 126 N. Y. 1; *Railroad Co.* v. *Brown,* 142 Ind. 659; *Finlayson* v. *Utica Co.* 67 Fed. Rep. 507; *Livingston* v. *Saginaw Co.* 109 N. W. Rep. 431; *Poorman Mines* v. *Devling,* 81 Pac. Rep. 252.

Assuming that plaintiff's evidence tends to establish the existence of a defect, it is necessary for the evidence to go further and show that the master had knowledge thereof or reasonable opportunity to learn of the defect, so as to avoid injury. *Railway Co.* v. *Patton,* 61 Fed. Rep. 259; Labatt on Master and Servant, sec. 126; *Johnson* v. *Railway Co.* 14 S. E. Rep. 432; *Dacey* v. *Railway Co.* 47 N. E. Rep. 418; *Railway Co.* v. *Young,* 45 Pac. Rep. 963.

The condition of the rock after the explosion being apparent and susceptible of proof by the witnesses, it was not proper to permit witnesses to testify, as experts, what, in their opinion, such condition would be after a certain kind of an explosion. 1 Elliott on Evidence, sec. 675; *Kelly* v. *Fond du Lac,* 31 Wis. 185; *Lind* v. *Inhabitants,* 9 Cush. 36; *Crane* v. *Northfield,* 33 Vt. 124; *Allen* v. *Railroad Co.* 7 Utah, 239.

Opinion cannot prevail over actual facts, and when facts are shown to exist they must be acted upon in preference to the opinions of experts. *Laughlin* v. *Railroad Co.* 62 Mich. 220; *People* v. *Vanderhoof,* 71 id. 158; *Linn* v. *Sigsbee,* 67 Ill. 75; *Hellyer* v. *People,* 186 id. 550; *Chicago* v. *McGiven,* 78 id. 347; *Railway Co.* v. *Kellogg,* 94 U. S. 469; *Schutz* v. *Railway Co.* 73 N. E. Rep. 491;

*Hughes* v. *Muscatine,* 44 Iowa, 672; *Dougherty* v. *Milliken,* 163 N. Y. 527; *Railroad Co.* v. *Smith,* 208 Ill. 608.

JOHN W. D'ARCY, for appellee:

The appellant had control of placing and exploding the dynamite used. Oestry, the deceased servant, had nothing to do with the explosives. Proof of the explosion made out a *prima facie* case. Appellant failed to explain or account for the presence in the stone ledge of unexploded dynamite, which caused Oestry's death. *Railroad Co.* v. *Phillips,* 55 Ill. 199; *Traction Co.* v. *Giese,* 229 id. 262; *Railroad Co.* v. *Prickett,* 210 id. 140; *Schaller* v. *Brewing Co.* 225 id. 492.

If perils arise from the doing of other work pertaining to the master's business different from that in which the servant is engaged, it is the master's duty to give warning of the additional danger and to employ such means as may be necessary to protect the servant. *Felice* v. *Railway Co.* 14 App. Div. (N. Y.) 345.

It is the duty of a master to exercise reasonable care to furnish the servant with a reasonably safe place to work, so far as the work will permit, and to inspect the place where the servant is working to see that he is not exposed to unusual dangers, and in the absence of knowledge or notice that such place is unusually dangerous the servant may assume that the master has performed his duty in that regard. *Telegraph Co.* v. *Likes,* 225 Ill. 249; *Railway Co.* v. *Snedaker,* 223 id. 405; *Steel Co.* v. *Ziemkowski,* 220 id. 332; *Stone Co.* v. *Turrell,* 205 id. 575.

It is a matter of common knowledge and universal experience that the use of dynamite is intrinsically dangerous, and courts will take judicial notice of that fact. *Chicago* v. *Murdock,* 212 Ill. 9; *Fitzsimmons* v. *Braun,* 199 id. 394.

A servant does not assume risks which are unusual, extraordinary or extrinsic to the employment, nor of the mas-

ter's negligence. He need not inspect or examine for hidden defects or dangers, but has a right to act on the presumption that the master has used reasonable care to make the place where he works reasonably safe. *Himrod v. Clark,* 197 Ill. 514; *LaSalle v. Kostka,* 190 id. 131; *Sash Co. v. Pohlman,* 210 id. 137; *Steel Co. v. McFadden,* 190 id. 344.

Mr. JUSTICE SCOTT delivered the opinion of the court:

In the discussion of the motion for a directed verdict a great deal of attention has been given to the question whether the maxim *res ipsa loquitur* applies, the position of appellee being that negligence may be inferred against the appellant from the fact of the explosion alone, while appellant insists that the evidence relied upon by appellee should have gone farther, and tended to prove that the presence of the unexploded dynamite was due to some specific act of carelessness on the part of appellant. The evidence clearly shows that the failure of this dynamite to explode may have resulted from any one of several causes. If there was a defect in the manufacture of the exploder, or if the exploder became moist, or if one of the wires leading to it had been broken, the current would not cause the dynamite to explode. Counsel urge that the failure to explode may have been the result of some defect in the manufacture of the exploder, for which appellant, who had used due care in the purchase of this material, should not be held responsible, and that the proof was fatally defective because it did not negative this and other like possibilities. Although the disposition of the case seems to have turned in the Appellate Court upon the question whether this maxim applies, we are not disposed to regard that as the crucial question. It was the duty of the appellant to exercise reasonable care in providing for deceased a reasonably safe place in which to work, and it may be conceded that the evidence shows, in this case, that after the charges had been exploded, two or three days before the accident, the mass of broken stone

resulting from the explosion had been inspected by employees of appellant, and that there was then nothing apparent to the eye, in any part of that mass of broken rock, to indicate that there was any unexploded dynamite contained therein. The evidence shows, however, that if, instead of exploding the dynamite in an entire block, but a single row of holes had been charged and the current applied to these charges at one time, an inspector examining the broken rock afterward could readily have ascertained the fact if the dynamite in one hole had failed to explode, because in that event there would have been a depression in the broken stone above the hole containing the unexploded dynamite.

Whether or not the exercise of reasonable care in providing a reasonably safe place for the deceased to work in required of appellant that the dynamite in but a single row of holes be exploded at one time, so that an inspection thereof would determine with greater certainty whether or not the dynamite in any one hole had missed, was a question for the jury. It is, perhaps, true, that the method just mentioned would not be as efficacious and speedy in preparing the stone for removal as the method actually used. It is also probable that in using the method now under consideration less satisfactory results would be obtained from the use of the same amount of dynamite than by using the method that was actually pursued and that the prosecution of the work would be made more expensive. In determining whether the exercise of due care on the part of appellant required the use of a slower and more expensive method, weight must be given to the fact that dynamite is a very powerful and dangerous force. In considering a similar question in *Commonwealth Electric Co.* v. *Melville,* 210 Ill. 70, we said (p. 78) : "Electricity is a subtle and powerful agent. Ordinary care exercised by those who make a business of using it for profit, to prevent injury to others therefrom,

requires much greater precaution in its use than where the element used is of a less dangerous character. As there is greater danger and hazard in the use of electricity, there must be a corresponding exercise of skill and attention for the purpose of avoiding injury to another, to constitute what the law terms ordinary care. The care must be commensurate with the danger." The law so stated is applicable here.

Nor can we say, as a matter of law, that the risk was assumed. Among the dangers assumed by a servant are the ordinary risks necessarily incident to the employment. This man's business was to assist in the operation of a steam shovel engaged in shoveling broken stone. The danger of an explosion of dynamite is not incident to this occupation, and it is not contended that there is any other basis herein for the application of the doctrine of assumed risk. The case was rightfully submitted to the jury.

Several witnesses, skilled by long experience in blasting stone by the method followed by appellant, testified, on the part of appellee, as experts, in reference to the effect of an explosion of a battery of charges and in reference to an explosion of a smaller number of charges upon the condition and appearance of a ledge of stone, for the purpose of showing whether under given circumstances a proper inspection would show the existence of a charge that had missed fire after the other charges had been simultaneously exploded. It is objected that this was not a proper subject of expert testimony, for the reason that this stone was, in fact, inspected and observed by several persons after the charges had been fired and before the accident occurred, and that the effect of admitting this testimony was to permit the opinions of experts to prevail over the actual facts as they were shown to exist by the testimony of those who had inspected the broken stone. We think this a misapprehension. The testimony of the experts tended to show that a method could have been pursued by which an inspection

would have revealed the existence of a charge that had missed fire after the current had been applied, and for that purpose it was proper.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*