## John F. Devine, Administrator of the Estate of Jesse R. Givens, Deceased, Appellee, v. Union Elevated Railroad Company, Appellant.

### Gen. No. 21,342.

1. MASTER AND SERVANT, § 653*—*when expert evidence admissible in action for death of dynamo tender.* In an action for the death of a dynamo tender employed in an electric power house, caused by his coming in contact with an equalizing switch, *held* that expert testimony as to the standard custom in wiring such switches was properly admitted on the question of contributory negligence of the deceased. ·

2. MASTER AND SERVANT, § 627*—*when expert evidence admissible in action for death of dynamo tender.* In an action for the death of a dynamo tender employed in an electric power house, caused by his coming in contact with an equalizing switch, *held* that expert testimony as to the cost of wiring the switch in accordance with the general practice was properly admitted on the question of the defendant's negligence, in view of evidence that the defendant's method of wiring was dangerous and an admission by the defendant's superintendent that he knew of the danger.

3. MASTER AND SERVANT, § 823*—*when instruction on burden of proof properly refused.* In an action against an employer for the death of an employee alleged to have resulted from defective appliances, the refusal of an instruction to the effect that, in order to recover, the burden was on the plaintiff to prove that the employer had notice of the defect, was not error where the declara-

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

tion charged and the evidence tended to show negligent construction of the appliances.

4. MASTER AND SERVANT, § 698*—*when evidence insufficient to show knowledge by dynamo tender of dangerous condition of switch.* In an action for the death of a dynamo tender employed in a power house, resulting from his coming in contact with an electric switch not wired in the customary manner, evidence *held* not to show that the deceased had either actual or constructive knowledge of the dangerous condition of the switch.

Appeal from the Circuit Court of Cook county; the Hon. LOCK-WOOD HONORE, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1915. Affirmed. Opinion filed October 10, 1916.

**Statement by the Court.** This is an appeal from a judgment for $8,000 entered by the Circuit Court of Cook county in favor of appellee (plaintiff below), in an action to recover damages for the death of Jesse R. Givens, a dynamo tender employed in appellant's power house. The deceased (twenty-two years old at the time of his death), went to work for appellant (defendant below), in its electrical power plant in Chicago on the night of May 13, 1911, and was killed on June 20, 1911, by coming in contact with an equalizing switch, known as No. 1, charged with electricity. The facts as to conditions in such plant at the time of the accident are not in dispute. Three generators of the same type and capacity, known as Nos. 1, 2 and 3, respectively, were installed therein in 1895 or 1896, by defendant, and a fourth generator, known as No. 4, of a different type and capacity, was installed in 1907. In front of each generator was an equalizing switch used to connect and disconnect the generator with an ''equalizing bus.'' The ''equalizing bus'' equalized the voltage between the several generators, preventing one generator from taking the entire voltage, and was always charged or ''alive,'' whenever any generator

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

was in operation. The four equalizing switches were connected with the equalizing bus.

It is undisputed that the uniform practice and method in wiring equalizing switches "since the beginning of the art" was to connect the equalizing bus to the "upper clip or jaw" of the switch in such manner, that when the switch itself was open, the blade of the switch would be "dead," providing that the generator with which it was connected was "dead." Defendant did not adopt such practice of wiring, as to equalizing switches Nos. 1, 2 and 3, respectively, but did as to No. 4. When equalizing switch No. 1 was open, and equalizing switch No. 4 was closed, with generator No. 4 operating, the metal or blade part of switch No. 1 would be charged with practically the full voltage of generator No. 4. Upon the other hand, if generator No. 4 was "dead," equalizing switch No. 4 would be "dead." The undisputed evidence is, that to have wired equalizing switches Nos. 1, 2 and 3, respectively, to correspond to the wiring of equalizing switch No. 4, would have cost not to exceed $10 for each switch.

The equalizing bus was in the basement under the engine room, and the wiring connecting the equalizing switches with the equalizing bus was inclosed in insulated conduits and was not apparent without thorough inspection. The floor of the power house was of iron. One wooden mat, for insulation purposes, was kept in front of each generator and another in front of each switch, so that if any person, while standing on such mat, made a contact with a charged switch blade with any part of his body, he would not be injured thereby. No one saw the accident which resulted in Givens' death. At that time generators Nos. 1, 2 and 3, respectively, were shut down, but generator No. 4 was operating. Under this condition the blade of switch No. 1 was "alive." Givens was seen about a minute before the accident cleaning the floor in front

of equalizing switch No. 1, with his body bending forward in such a manner that his head and shoulders were only a few inches from the blade of said switch. He was standing on the iron floor within about two and one-half feet of the nearest wooden mat. When next seen he was prostrate on the floor, his feet nearest the switch. The mats at that time were out of position and a pair of gloves were lying on the floor near his body. It is not disputed that he received a shock and was electrocuted by his body coming in contact with the blade of said switch.

The evidence is undisputed that Givens had studied electricity, was familiar with the kind of electrical current used in defendant's plant, had worked in two other similar power houses, covering a period of three and one-half years, and was a man of careful habits. There is a sharp conflict of evidence as to whether Givens knew that the blade of equalizing switch No. 1 was charged with electricity and dangerous while it was open, and its generator "dead," provided any of the other generators, and particularly generator No. 4, was operating. The question of assumed risk is the principal one raised under plaintiff's declaration and the evidence presented at the trial.

ADDISON L. GARDNER and CARROLL H. JONES, for appellant.

GEORGE H. MASON, for appellee; JOSEPH R. W. COOPER and JAMES H. WRIGHT, of counsel.

MR. JUSTICE McGOORTY delivered the opinion of the court.

Defendant's counsel rely upon a reversal of the judgment upon the following assignments of error: That the court erred (a) in the admission of certain

evidence on behalf of plaintiff; (b) in its refusal to give to the jury certain instructions requested by defendant; and (c) that the verdict is contrary to the weight of the evidence.

Defendant's counsel, by their first assignment of error urge that the court erred in permitting three of plaintiff's expert witnesses to testify that the standard custom in wiring equalizing switches in high tension electrical generating plants is to wire them in such manner that when the switch is open and its generator "dead," the metal part or blade of the switch is "dead" and does not carry any electrical current. When defendant's equalizing switch No. 1 was open, and its generator "dead," the metal part would be charged with electrical current if any other generator was running. Plaintiff's experts did not testify that the standard practice of wiring equalizing switches was a safer or better method than the method used by defendant in wiring equalizing switch No. 1, and did not testify as to whether defendant's method in wiring said equalizing switch was safe or unsafe. The jury were permitted to determine from the evidence which, if either, method was unsafe. It is obvious that the question of the correct method of wiring said switch was a proper subject of expert testimony. Upon what other basis could the jury have determined the question as to defendant's negligence? The deceased was experienced in the operation of similar electrical power plants, and if said switch had been wired by defendant in accordance with the general practice and standard custom, the jury would have had the right to have found that Givens had knowledge of the actual condition there and had assumed any hazard incident thereto. If however, as in the instant case, the evidence shows that the uniform custom and practice was to wire equalizing switches so that the metal part or blade would be "dead" when the switch was open and

its generator "dead," then the existence of such uniform custom, of which Givens presumably had knowledge, would tend to show that he did not assume the risk and that he was not guilty of contributory negligence.

If such evidence had been excluded, upon what basis could the jury have determined that any other method of wiring equalizing switch No. 1 was open to defendant? "On the question whether the employer *has exercised reasonable and ordinary care* in providing and maintaining *safe appliances,* and places for work, the plaintiff may show *the general practice of other employers* in similar lines of employment in these respects." Thompson on Negligence, vol. 6, p. 709. The court did not err in admitting such evidence. *McCormick Harvesting Machine Co. v. Burandt,* 136 Ill. 170; *Stephen v. Duffy,* 237 Ill. 549-558.

It is also urged as error by defendant's counsel, the admission by the court of expert testimony as to the cost of wiring its equalizing switches, Nos. 1, 2 and 3, according to the general practice. This evidence tended to show that such change in wiring could be made at a very slight expense, and was therefore pertinent to the issue of defendant's negligence, especially in view of the discovery made by defendant's chief switchboard operator that the blade of equalizing switch No. 1 would be charged with electricity when its generator was not in operation, which fact was reported to defendant's superintendent several months prior to Givens' death, and in further view of the admission by the latter that he had always known of such danger.

It is urged that the court erred in refusing three instructions tendered by defendant. Two of defendant's refused instructions were fully covered by defendant's given instructions. The third of defendant's refused instructions required the servant, in

order to recover for defects in the appliances of the master's business, to prove that the master had notice or knowledge thereof. In the instant case the declaration charges and the evidence tends to show negligent construction by the defendant of the switch in question, and therefore proof of notice to the master (defendant) was not necessary. *Linquist v. Hodges,* 248 Ill. 491-497.

It is further urged that the verdict is against the manifest, weight of the evidence on the ground that Givens had actual knowledge of the dangerous condition of equalizing switch No. 1; knew that the blade of said switch was charged with electricity, when its generator was ''dead'' if any other generator was then operating, therefore assumed the hazard thereof, and was guilty of contributory negligence. It is to be considered that the deceased was experienced in his duties; had worked in other plants where equalizing switches had been wired in accordance with the standard custom, so that if a generator was not running, the blade of its switch would be ''dead,'' and in the absence of actual knowledge, had the right to assume that defendant, in the exercise of ordinary care, had adopted such method in wiring equalizing switch No. 1. There is a sharp conflict of evidence as to Givens' actual knowledge of the dangerous condition of said switch when open. Upon a most careful examination of all of the evidence, we are unable to say that Givens had either actual or constructive knowledge of such dangerous condition, or that the verdict is against the manifest weight of the evidence. The judgment of the Circuit Court will therefore be affirmed.

*Judgment affirmed.*