## Photo Cines Company, Defendant in Error, v. American Film Manufacturing Company, Plaintiff in Error.

### Gen. No. 20,057.

1. APPEAL AND ERROR, § 578*—*when exception to judgment necessary.* Section 23 of the Municipal Court Act of 1905 as amended in 1907, (J. & A. ¶ 3335,) which has reference to the prosecution of writs of error in cases of the fourth and fifth classes, does not authorize the Appellate Court to review the evidence in a fourth class case tried without a jury to determine whether a judgment is against the weight of the evidence where there is no formal exception to the judgment.

2. APPEAL AND ERROR, § 551*— *how statutes as to exceptions are construed.* The second clause of section 81 of the Practice Act as amended in 1911, (J. & A. ¶ 8618,) as to exceptions during the progress of any trial, and sections 82 and 83, (J. & A. ¶¶ 8619, 8620,) authorizing the allowance of an exception to a final judgment of the court in a case tried without a jury, are to be construed together.

3. APPEAL AND ERROR, § 551*—*when exception during trial is necessary.* Under section 81 of the Practice Act as amended in 1911, (J. & A. ¶8618,) as to exceptions during the progress of any trial, the word "trial" means a judicial examination of the issues between the parties, and such section is not strictly construed.

4. APPEAL AND ERROR, § 551*—*when exception is necessary.* Section 81 of the Practice Act, (J. & A. ¶ 8618,) providing for a review

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Photo Cines Co. v. American Film Mfg. Co., 190 Ill. App. 124.

of any matters at the trial, upon which the court rules adversely, without formal exception thereto, is not confined to a ruling made before the court has pronounced the finding, and does not exclude the judgment or decision of the court, it being the evident intent of the legislature to provide a method for the review of causes without the necessity of the record disclosing that a formal exception was taken at the time to the adverse ruling upon which error is assigned.

5. APPEAL AND ERROR, § 578*—*when court may review evidence.* In an action of the fourth class before the Municipal Court of Chicago, where the case was tried by the court without a jury, and where the defendant objected to a finding against it and moved for a new trial, the Appellate Court was authorized to determine whether such finding was against the weight of the evidence, where the stenographic report of the trial complied with section 81 of the Practice Act, (J. & A. ¶ 8618,) but did not show that the defendant excepted to the entry of the judgment.

6. SALES, § 267*—*when warranty is violated.* In an action to recover damages for breach of an oral contract to purchase raw cinematograph film, the evidence was *held* to show that such film was purchased under an express warranty, that the same was first class and of good quality, and also under an implied warranty that it was merchantable and fit for the defendant's use, and since such film did not comply with the warranties, the defendant was not liable for film shipped after notice to the plaintiff not to make further shipments.

7. SALES, § 404*—*when evidence will warrant recovery for breach of warranty.* In an action for damages for breach of an oral contract to purchase raw cinematograph film, a finding in favor of the plaintiff was *held* not warranted by the evidence, since the evidence as to damages was not sufficiently definite to warrant such finding, and since it was not sufficiently shown that the plaintiff in making a resale of film, which the defendant refused to accept, did so to the best advantage of the defendant.

BARNES, P. J., concurring specially.

Error to the Municipal Court of Chicago; the Hon. JOSEPH S. LA BUY, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1914. Reversed and remanded. Opinion filed December 22, 1914. Rehearing denied January 5, 1915.

JAMES P. GRIER and DAYTON OGDEN, for plaintiff in error.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

NEWMAN, POPPENHUSEN & STERN, for defendant in error; CHARLES T. FARSON, of counsel.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

The Photo Cines Company, a corporation with principal office in the city of New York, commenced an action of the fourth class in the Municipal Court of Chicago, to recover damages for the breach of an oral contract, against the American Film Manufacturing Company, an Illinois corporation with principal office in the city of Chicago, defendant. It was alleged in plaintiff's statement of claim, in substance, that under said contract plaintiff agreed to sell and ship to the defendant at Chicago, and the defendant agreed to accept from the plaintiff 68,012 feet of raw, positive, cinematograph film, at three and one-half cents per foot, said film to be paid for in cash upon the delivery thereof; that on or about February 16, 1911, plaintiff shipped said film to Chicago but defendant refused to accept and pay for the same; that by reason of such refusal plaintiff was obliged to sell said film "in the open market" at great loss, and also incurred expenses for express and freight charges, and plaintiff sustained damages in the sum of $752.22. In defendant's affidavit of merits it was alleged, in substance, that defendant did not owe plaintiff any sum as damages; that plaintiff violated said oral contract in that the film offered to be delivered to defendant was defective in quality and not according to the terms of said contract as to quality, and was unmerchantable and wholly unfit for use in defendant's business; that because of this defendant refused to accept said film; and that portions of the film, sold under said contract and previously accepted by defendant, were so defective in quality that the use thereof resulted in great damage and loss to defendant and brought it into bad repute with its customers, etc. The case was tried before the

court without a jury, resulting in the court finding the issues against the defendant and assessing plaintiff's damages at the sum of $752.22, and entering judgment upon the finding.

The defendant seeks by this writ to reverse the judgment, chiefly upon the ground that the finding and judgment are against the weight of the evidence. The plaintiff contends that inasmuch as it does not appear from the stenographic report of the proceedings at the trial that defendant excepted to the judgment, the question of the sufficiency of the evidence to support the judgment cannot now be inquired into by this court.

The stenographic report appears to have been submitted to the trial judge for certification by him and to have been filed with the clerk of the court in apt time. It purports on its face to be a "stenographic report of the testimony taken and proceedings had on the trial," and to contain all the evidence, and it seemingly contains the rulings of the court upon all the questions submitted and ruled upon by the judge of the court. The trial judge certifies over his official signature that the same "is a full, true and complete transcript of all the evidence taken and offered at the trial of the foregoing case and the rulings of the court with respect to such evidence, and a correct stenographic report of the proceedings at the trial of said case, and a correct statement of such other proceedings in said case as said party desires to have reviewed." It also appears that after the court had announced his finding the defendant moved to set the same aside and for a new trial, which motion was overruled and defendant excepted, and thereupon the court entered judgment in the following words: "Enter judgment in favor of the plaintiff and against the defendant in the sum of $752.22," and thereupon defendant, by its counsel, prayed an appeal to this court, which was allowed upon filing bond, etc. But the re-

port does not disclose that the defendant excepted to the entry of the judgment, and it does not appear that any propositions of law were submitted.

Prior to the amendment, hereinafter mentioned, to section 81 of the Practice Act of 1907, (J. & A. ¶ 8618), it was the law that in the absence of an exception to the judgment, in a case tried before the court without a jury, the sufficiency of the evidence to support the judgment could not be inquired into upon an appeal. *Climax Tax Co. v. American Tag Co.,* 234 Ill. 179, 182. And it was also the law that in a case so tried a motion for a new trial was neither required nor authorized by law or the rules of practice, and could serve no purpose whatever in preserving questions for review. *Climax Tag Co. v. American Tag Co., supra; Mahony v. Davis,* 44 Ill. 288, 291; *Sands v. Kagey,* 150 Ill. 109, 114; *Union Ins. Co. v. Crosby,* 172 Ill. 335, 336. In the *Crosby* case the action was in assumpsit and a trial was had before the court without a jury and judgment was rendered for the defendant. No propositions of law were submitted to the trial judge and no exception was taken to the judgment. A motion for a new trial, however, was made, and it was argued that such motion was, of itself, a sufficient exception to the judgment, but the court held to the contrary. In the *Climax Tag Co.* case the action was also in assumpsit and a trial was had without a jury and the finding and judgment were in favor of the plaintiff. The bill of exceptions disclosed that when, at the conclusion of the trial, the court announced its decision finding the issues for plaintiff and assessing its damages at a certain sum, counsel for defendant said: "I think you are wrong," and stated he desired to enter a motion for a new trial, and that thereupon the court announced: "Motion for new trial overruled and exception, appeal prayed to Appellate Court and granted; you can have thirty days for a bond"; but the bill of exceptions did not disclose that a formal exception

was taken to the judgment itself. It was contended in the Supreme Court that said statement of defendant's counsel, made when the court announced its decision, was a protest against the court's finding and judgment, and was to all intents and purposes an exception, but the court held otherwise. It was further contended that said statement of defendant's counsel, followed by a motion for a new trial, which motion was overruled, exception taken to the order overruling the motion and an appeal prayed and allowed, showed an intention to have the court's rulings reviewed, and that what he said as to the rendition of the judgment, in the light of the subsequent steps taken, should be held to be an exception to said judgment, but the court held to the contrary. In the light of the decisions of our Supreme Court we are of the opinion that in the present case, the stenographic report not affirmatively showing that defendant formally excepted to the judgment of the trial court, the question whether the judgment is against the weight of the evidence cannot be considered by us, *unless* we are authorized to do so under and by virtue of the amendment, hereinafter mentioned, to section 81 of the Practice Act of 1907.

And we do not think that we are authorized to review the evidence in the absence of a formal exception to the judgment, because of the provisions contained in subdivision 8 of section 23 of the Municipal Court Act of 1905, as amended in 1907 (J. & A. ¶ 3335), which section has reference to the prosecution of writs of error in cases of the fourth and fifth classes. Said subdivision provides in part as follows:

"Nor shall *any exceptions* to the rulings and decisions of the Municipal Court upon the trial, which appear to have been made against the objection of the party complaining thereof, be necessary to the right of either party to a review of such rulings and decisions in the Supreme Court or Appellate Court upon their merits, but it shall be the duty of the Supreme Court or the Appellate Court, as the case may be, to decide

such case upon its merits as they may appear from such statement or stenographic report or reports signed by the judge.''

Section 38 of said Municipal Court Act as amended (J. & A. ¶ 3350), provides in part as follows:

''That whenever it appears in any bill of exceptions signed in any case of the first class or any case of the second class or any case of the third class or any bastardy case, * * * that any erroneous ruling was made by said Municipal Court, against the objection of the party complaining thereof, but that *no formal exception* was taken by such party thereto, such erroneous ruling shall be subject to review upon appeal or writ of error to the same extent and in like manner *as if it appeared that a formal exception had been taken thereto* by the party complaining.''

In *Blake v. DeJonghe Hotel & Restaurant Co.,* 263 Ill. 471, which was a case of the first class in the Municipal Court tried without a jury, it is said (p. 473, italics ours):

''Although in this case there was a waiver of a jury, nevertheless the Appellate Court had no authority to determine the question of fact or to review the evidence because there was no exception to the judgment of the trial court. * * * The defendant in error relies upon section 38 of the Municipal Court Act, * * *. Section 29 of article 6 of the constitution requires all laws relating to courts to be of uniform operation, and this requires that they shall operate uniformly in all similar cases in the particular court. The provision of the Municipal Court Act just mentioned is in conflict with this provision of the constitution and is therefore void. In all cases coming from any court but the Municipal Court, the Appellate Court or this court could review the judgment of the trial court as to the evidence only in case an exception was taken to the judgment and made a part of the record by a bill of exceptions. Section 38 would destroy uniformity of procedure and practice of this court and the Appellate Court in cases coming from the Municipal Court, and the provision is in conflict with the constitution. * * * *The amendment to section 81*

*of the Practice act did not go into effect until July 1, 1911, eight months after the trial in the Municipal Court, and did not affect this case."*

It will be noticed that the provisions of said section 23 and of said section 38 of the Municipal Court Act as regards exceptions are quite similar. If, for the reasons stated in the *Blake* case, *supra;* this Appellate Court has no authority to review the evidence in a *first class* case, tried in the Municipal Court without a jury, because no exception was taken to the judgment, we think it is plain that for the same reasons this court has no authority to review the evidence in a *fourth class* case, tried in said Municipal Court without a jury prior to July 1, 1911, it not appearing that an exception was taken to the judgment. *Lassers v. North-German Lloyd Steamship Co.,* 244 Ill. 570, 573. The present case is one of the *fourth* class, tried in the Municipal Court without a jury in October, 1913, the judgment being entered on October 16th, more than two years after said amendment to section 81 of the Practice Act of 1907 went into effect.

What is that amendment? And by virtue of it are we authorized to review the evidence in the present case, notwithstanding it does not appear that any formal exception was taken to the entry of the judgment?

Section 59 of the Practice Act of 1872 provided as follows:

"If, during the progress of any trial in any civil cause, either party shall allege an exception to the opinion of the court, and reduce the same to writing, it shall be the duty of the judge to allow said exception, and sign and seal the same, and the said exception shall thereupon become a part of the record of such cause."

The above provision became the first clause of section 81 of the Practice Act of 1907, with the words "and seal" omitted, and with the words "or criminal" added between the words "civil" and "cause," and

other clauses were added, and became a part of section 81, as to the sufficient authentication of a bill of exceptions or certificate of evidence, etc.

By the amendment made to section 81 in 1911, the said first clause of the section remained in the section, and immediately preceding said clause the following new clause appeared as the first clause of the section:

"If, during the progress of any trial in any civil or criminal cause, either party shall submit to the court any matter for a ruling thereon and the court shall rule adversely to the party submitting the same, such ruling shall be deemed a matter for review in any court to which the same cause may be thereafter taken upon appeal or by writ of error *without formal exception thereto,* and after judgment, at any time during the term of the court at which judgment was entered or within such time thereafter as shall, during such term, be fixed by the court, any party desiring to prosecute a writ of error to or appeal from any such judgment, may submit to the court a *stenographic report of the trial* containing the evidence and the rulings of the court upon all or any of the questions submitted to and ruled upon by the judge thereof, and he shall examine the same, and, if correct, officially certify to the correctness of such report, and the same shall thereupon be filed in said court and become a part of the record in said cause, and all matters and things contained in such stenographic report shall become as effectually a part of said record as if duly certified in a formal bill or bills of exceptions, or  *  *  *  ."

In said section 81, as amended in 1911, again was contained the clauses as to the sufficient authentication of a bill of exceptions or certificate of evidence, save that wherever the words "bill of exceptions or certificate of evidence" appeared, these words were changed to read "bill of exceptions, certificate of evidence or *report of trial*"; and other new clauses were added relative to the filing of a *præcipe* for a record, etc.

Photo Cines Co. v. American Film Mfg. Co., 190 Ill. App. 124.

Sections 60 and 61 of the Practice Act of 1872 provided as follows:

"60. Exceptions taken to decisions of the court, upon the trial of causes in which the parties agree that both matters of law and fact may be tried by the court, and in appeal cases, tried by the court without the intervention of a jury, shall be deemed and held to have been properly taken and allowed, and the party excepting may assign for error, before the Supreme Court, any decision so excepted to, whether such exception relates to receiving improper or rejecting proper testimony, or to the final judgment of the court upon the law and evidence."

"61. Exceptions taken to decisions of the court, overruling motions in arrest of judgment, motions for new trials, motions to amend and for continuances of causes, shall be allowed, and the party excepting may assign for error any decision so excepted to."

These two sections became sections 82 and 83, respectively, of the Practice Act of 1907 (J. & A. ¶¶ 8619, 8620), save that in section 82 the words "before the Supreme Court," contained in section 60, were omitted. It may be of assistance to a better understanding of the meaning of the three sections, section 81 as amended, and sections 82 and 83, as construed together, to here relate a portion of their history.

Anciently, no error could be assigned, except for an error of law, apparent upon the face of the record itself. *Baxter v. People,* 8 Ill. (3 Gilm.) 368, 373. Hence, where a party alleged anything *ore tenus* which was overruled by the judge, this could not be assigned for error. *Yarber v. Chicago & A. Ry. Co.,* 235 Ill. 589, 598; *Wheeler v. Winn,* 53 Pa. St. 122, 126. "There was no bill of exceptions, and, therefore, no ruling on the admission or rejection of evidence, error in the charge of the court, or objection of any kind arising on the trial, could be alleged for error because it did not appear on the record, and so the party aggrieved had no remedy." *Yarber* case, *supra.* To

134     APPELLATE COURTS OF ILLINOIS.

Photo Cines Co. v. American Film Mfg. Co., 190 Ill. App. 124.

remedy this hardship the Statute of Westminster 2 (13 Edw. 1, ch. 31) was passed, "which directed the justices to allow and put their seals to an exception when he that alleges the exception writes the same and requires them to do so. The statute did not appoint the time when the exception should be allowed and sealed, but the practice was, as the nature of the thing required, that the substance of the exception should be reduced to writing when taken, though it need not then be drawn up in form. (2 Tidd's Pr. 863.) By the statute of February 4, 1819 (which is now chapter 28 of the Revised Statutes), this statute became a part of the law of Illinois." *Haines v. Knowlton Danderine Co.*, 248 Ill. 259, 261. By virtue of said statute of Westminster 2, "the bill of exceptions was upon a matter of *law* arising on the trial and *not* upon any question of *fact,* and judgment was required to be given on the writ of error according to the exception as it ought to be allowed or disallowed. But no question of *fact* could be drawn into examination *again* by a bill of exceptions. * * * The motion for a new trial was not only unnecessary, it was practically unknown. * * * It was not until the middle of the seventeenth century that the practice of granting new trials upon motion began to prevail, * * *. The object of the motion for a new trial was *not* to review any error of *law* committed by the court, but was to review the question of *fact* as found by the jury. The granting or denial of the motion was entirely *discretionary* with the court. No exception could be taken to the decision thereon, nor could it be assigned for error." *Yarber* case, *supra.*

In 1827 the General Assembly of this state passed an act entitled "An Act concerning Practice in Courts of Law," in force June 1, 1827 (Revised Laws, 1827). Section 19 of the act provided:

"If during the progress of any trial in any civil cause, either party shall allege an exception to the opinion of the court, and reduce the same to writing,

it shall be the duty of the judge to allow the said exception, and sign and seal the same; and the said exception shall thereupon become a part of the record of such cause.''

Our Supreme Court has held that this section was ''substantially the same as the Statute of Westminster 2'' and ''introduced no change.'' *Haines* case, *supra.* The section became section 21 of the Practice Act of 1845 (R. S. 1845), and later section 59 of the Practice Act of 1872, and still later, with the slight changes above mentioned, the first clause of section 81 of the Practice Act of 1907, and still later, with said slight changes, the second clause of section 81, as amended in 1911.   Both before and after the passage of said Practice Act of 1827, and until the passage of the act of July 21, 1837, hereinafter mentioned, our Supreme Court in several cases held that the granting or refusing a new trial was a question to be determined in the sound *discretion* of the trial court, and that no exception could be taken or error assigned on the trial court's refusal.  *Clemson v. Kruper,* Beecher's Breese 210; *Street v. Blue,* id. 261; *Adams v. Smith,* id. 283; *Vernon, Blake & Co. v. May,* id. 294; *Harmison v. Clark,* 2 Ill. (1 Scam.) 131.   In *Clemson v. Kruper, supra* (decided before section 19 of the Act of 1827 was passed), a verdict was returned for the plaintiff, Kruper, in an action of assumpsit.   The defendant's motion for a new trial was overruled, ''and a bill of exceptions, containing the evidence given on the trial, was taken to the opinion of the court overruling the motion for the new trial.''  Judgment was rendered on the verdict, and defendant assigned as error in the Supreme Court the overruling of his motion for a new trial.  It was urged by defendant in error (plaintiff) that the refusal to grant a new trial could not be assigned for error, and the court so held and affirmed the judgment, saying (p. 211): ''This objection, the court think, well taken, both on the score of adjudged cases, and on principle.  A bill of excep-

tions cannot be taken, unless the exception be made *on the trial, and before the jury is discharged,* and it lies for receiving improper or rejecting proper testimony, or misdirecting a jury on a point of law. The bill of exceptions taken in this case was not for any decision that occurred *during the progress of the trial,* and was therefore improperly allowed." The other cases, last above cited, were all decided after said act of 1827 was passed, and were to the effect, following *Clemson v. Kruper, supra,* that a refusal to grant a new trial could not be assigned as error. After the passage of said act of 1827 and until the passage of said act of July 21, 1837, hereinafter mentioned, our Supreme Court in several cases also held that a bill of exceptions would not lie to the final judgment of the trial court, where the case was tried by the court without a jury. *Swafford v. Dovenor,* 2 Ill. (1 Scam.) 165; *White v. Wiseman,* id. 169; *Gilmore v. Ballard,* id. 252; *Ballingall v. Spraggins,* 2 Ill. 330. In the *Gilmore v. Ballard* case, the court followed the holding in *Clemson v. Kruper, supra,* to the effect that a bill of exceptions cannot be taken unless the exception be made *on the trial,* and that it lies only for receiving improper or rejecting proper testimony, or deciding incorrectly a point of law, and said (p. 253): "In the present case, the bill of exceptions was taken to the judgment of the court upon the *facts* given in evidence by the parties. The course to be pursued in a case tried by the court without a jury is clearly pointed out in the case of *Swafford v. Dovenor,*  *  *  *. Whenever the defendant supposes that the plaintiff has failed to support his action, he should move the court to nonsuit the plaintiff, or demur to the testimony. If he does neither, and goes on and gives evidence, the office of the judge is then completely merged into that of a juror. He has only to decide upon the *weight* of testimony; and his decision, if wrong, can only be reviewed in the same manner as the wrong

verdict of a jury, to wit, by *application for a new trial,* and consequently a bill of exceptions cannot be taken.''

It doubtless sometimes happened, in cases tried with or without a jury, that the trial court in refusing a new trial abused the discretion vested in it, yet the defeated litigant could not assign as error such refusal in an Appellate Court. To remedy this hardship the General Assembly passed an Act, in force July 21, 1837, entitled: ''An Act to amend the Act entitled 'An Act concerning Practice in Courts of Law,' approved 29th January, 1827.'' Laws of 1837, special session, p. 109. This amendment consisted of two sections, the first applying to cases tried by the court without a jury and the second to other cases, and is as follows:

''Sec. 1. * * * Exceptions taken to opinions and decisions of the circuit courts, upon the trial of causes, in which the parties agree that both matters of law and fact may be tried by the court; and in appeal cases, tried by the court without the intervention of a jury, shall be deemed and held to have been properly taken and allowed, and the party excepting may assign for error before the Supreme Court, any decision or opinion so excepted to, whether such exception relates to receiving improper, or rejecting proper testimony, or to the final judgment of the court upon the law and evidence.''

''Sec. 2. Exceptions taken to opinions or decisions of the circuit courts, overruling actions in arrest of judgment, motions for new trials, and for continuances of causes, shall hereafter be allowed; and the party excepting may assign for error any opinion so excepted to, any usage to the contrary notwithstanding.''

These two sections became sections 22 and 23, respectively, of the Practice Act of 1845, save that section 23 of the Act of 1845 did not have the words, ''any usage to the contrary notwithstanding.'' And said two sections, with other slight changes, later became sections 60 and 61, respectively, of the Practice Act of 1872, and still later became sections 82 and 83, respec-

138    APPELLATE COURTS OF ILLINOIS.

Photo Cines Co. v. American Film Mfg. Co., 190 Ill. App. 124.

tively, as slightly changed, of the Practice Act of 1907.

In civil cases tried before a jury, after the passage of said Act of July 21, 1837, authorizing exceptions to be taken to the overruling of a motion for a new trial, our Supreme Court held that an appeal would lie from the decision of the trial court refusing such motion. *Smith v. Shultz,* 2 Ill. (1 Scam.) 490; *Yarber v. Chicago & A. Ry. Co.,* 239 Ill. 589, 600. It was also held that, such right of exception being entirely statutory, and being allowed only to the *overruling* of motions for new trials, the refusal to *grant* a new trial was not reviewable (*Brookbank v. Smith,* 3 Ill. (2 Scam.) 78); and such is still the law. (*Yarber* case, *supra.*) It was also held that, in civil cases so tried, the overruling of a motion for a new trial, although the evidence was wholly insufficient to warrant the jury's verdict, could not be reviewed, in the absence of an exception taken to the decision of the court in overruling said motion. *Pottle v. McWorter,* 13 Ill. 454, 456. And, as late as October, 1908, it was decided in the *Yarber* case, *supra,* (p. 597) that: "In order to bring the question of the *sufficiency of the evidence to sustain the verdict* before this court for review it is necessary for the losing party to make a motion for a new trial, and, upon its being overruled, to except to such ruling, and to include such motion, the order overruling the same, and his exception thereto, together with the evidence, in the bill of exceptions."

In civil cases tried before the court without a jury, after the passage of said Act of July 21, 1837, authorizing the taking of an exception "to the final judgment of the court upon the law and evidence" and assigning error thereon, our Supreme Court held that error could be assigned on such decision provided it appeared in the bill of exceptions that an exception was taken at the time to such decision (*Parsons v. Evans,* 17 Ill. 238; *Metcalf v. Fouts,* 27 Ill. 110, 114; *David M. Force Mfg. Co. v. Horton,* 74 Ill. 310, 311); and that in case

it appeared that such exception was so taken, it was not necessary, in order to have the evidence reviewed, that it further appear either that a motion for a new trial was made, or if made and overruled that an exception was taken to the overruling of the motion. *Mahony v. Davis,* 44 Ill. 288, 292; *Jones v. Buffum,* 50 Ill. 277, 279.) As said in *Mahony v. Davis, supra,* where it was contended that the court could not review the evidence because there had not been made'a motion for a new trial: ''There is an early decision of the court to that effect, but the late practice of the court has been to confine that decision to cases where the trial was by a jury. In the present instance it was by the court, and, the judge having once passed upon the evidence, it was not necessary to go through the form of submitting it to him again by moving for a new trial.''

It will be noticed that the provisions, strictly construed, of section 19 (relating to exceptions) of the Act of 1827, required that the exceptions to the opinion of the court should be alleged and reduced to writing by the party, and allowed, signed and sealed by the judge, all, *during the progress of the trial.* Before the passage of the act of July 21, 1837, our Supreme Court held, as above shown, that in civil cases tried before a jury the exception must be taken ''on the trial and before the jury is discharged'' (*Clemson v. Kruper, supra*), and that in cases tried without a jury the exception must be taken ''on the trial.'' (*Swafford v. Dovenor, supra; Gilmore v. Ballard, supra.*) When the act of July 21, 1837, was passed, authorizing the allowance of an exception taken to the decision of the trial court in overruling a motion for a new trial in a jury case, and further authorizing the allowance of an exception taken to the *final judgment* of the court in a case tried without a jury, section 19 of the act of 1827 still remained in the statutes, and the provisions of both acts, except as slightly changed as above shown,

continued to remain in the statutes, and are now contained in the Practice Act of 1907, as amended. We think it appears that since July 21, 1837, these provisions have been construed together by our Supreme Court, and that they should now be construed together. It is manifest that the decision of the trial court in a case tried before a jury, overruling a motion for a new trial, is subsequent to the rendition of the verdict; and it is equally manifest that the decision of the court in a case tried without a jury, rendering a final judgment on the law and evidence, is the conclusion of the trial. An exception *taken* to the judgment cannot be *alleged* before the judgment is pronounced.

The word "trial" is defined in 2 Burrill's Law Dictionary (2nd Ed.) page 545, as follows: "In a general sense. The formal investigation and decision of a matter in issue between parties, before a competent tribunal. * * * In a stricter sense,—the examination before a competent tribunal, according to the laws of the land, of the *facts* put in issue in a cause, for the purpose of determining such issue." In *Clennon v. Britton*, 155 Ill. 232, 243, our Supreme Court said that the words "trial" and "hearing" are "familiar terms, and are generally understood as meaning a judicial examination of the issues between the parties, whether of law or of fact." In 21 Encyc. Pl. & Pr., 957, it is said: "The trial may be considered as incomplete until all the issues of law as well as of fact have been determined and until final judgment has been entered." In *Jenks v. State*, 39 Ind. 1, it appeared that it was provided in a certain section of the statutes of the State of Indiana that all bills of exception in a criminal case must be made out and presented to the judge "at the time of the trial," or within such time thereafter during the term as the court might allow, signed by the judge and filed by the clerk; that the bill of exceptions was not signed or filed at the term at which the cause was submitted to the jury, but was signed and filed at

the second term thereafter, that being the term at
which the motion for a new trial was determined and
judgment rendered; and that it was contended in the
Supreme Court that said bill of exceptions was not
properly in the record. The Court, in denying the
contention, said (p. 10): "Until the motion for the
new trial was disposed of, the cause was pending in
court. * * * The proceedings were *in fieri* until
judgment was rendered. We are of the opinion that
the word trial, as used in the above section, was not
used in its limited and restricted sense, but in a gen-
eral sense, and includes all the steps taken in the cause
from the submission of the cause to the jury to the
rendition of judgment. * * * We think the sec-
tion under examination should receive a liberal and
beneficial construction, and not a strict, technical, and
restricted one." In *Hake v. Strubel,* 121 Ill. 321, 326,
our Supreme Court said: "By an unbroken line of
decisions it has been held by this court, that the excep-
tion must be taken at the time the alleged erroneous
ruling or decision was made; and, also, that the bill of
exceptions should show upon its face that the excep-
tion was taken at the time, and the bill signed, sealed
and filed during the term. But to meet the varying
exigencies, and for the convenience of bench and bar,
the practice early obtained of allowing time in which
to present the bill of exceptions, by an order entered
of record in the cause, or by a written stipulation of
parties filed in the case; and the time thus allowed
often extended beyond the term, and the correctness of
this practice has been repeatedly sanctioned by this
court. See *Evans v. Fisher,* 5 Gilm. 453; *Burst v.
Wayne,* 13 Ill. 664; *Brownfield v. Brownfield,* 58 id.
152; *Goodrich v. Cook,* 81 id. 41." In *Haines v.
Knowlton Danderine Co.,* 248 Ill. 259, 261, it is said:
"This practice was not founded upon the statute but
grew out of the action of the courts." In *Burst v.
Wayne, supra,* the court, after quoting section 21 of
the Practice Act of 1845 (which is the same as section

19 of the Act of 1827), said: "Strictly speaking a party under this statute would be required to reduce his exception to writing, and have it signed *during the progress of the trial;* but a strict compliance with the letter of the statute would, in many cases, be impracticable, and has never been required." It is thus seen that our Supreme Court, at least since the Act of July 21, 1837, has not strictly construed the provisions of section 19 of the Act of 1827 (which are now in substance contained in section 81 of the Practice Act of 1907, as amended in 1911).

In the case of *Miller v. Anderson,* 189 Ill. App. 72, recently decided by the "D" branch of this court, Miller and others, appellees, recovered a judgment in the Municipal Court, on a trial had before the court without a jury in a suit of the first class, against Anderson. The latter claimed that the evidence was insufficient to sustain the judgment, while appellees insisted that the evidence could not be reviewed because no exception was taken to the judgment. The transcript of the record contained a bill of exceptions, and the bill did not disclose any exception taken to the judgment. The court held that the document, in its particular form, could not be treated and considered as a sufficient stenographic report of the trial under the provisions of the first clause of section 81 of the Practice Act of 1907, as amended in 1911, and, therefore, refused to review the evidence, in the absence of an exception to the judgment. In the course of the opinion, delivered by Mr. Presiding Justice Fitch, the court gave its construction of the new first clause of said amended section as coupled, by the word "or," with the second clause of said amended section (which second clause was the first clause of the section before the same was amended) and said, in substance, that by passing the section as amended, the legislature did not thereby abolish bills of exceptions but merely made provision for an *alternative* method of presenting questions for review, in the form of a stenographic

report of the trial; that, by virtue of the first clause of said amended section, any party, desiring to prosecute a writ of error to or appeal from any judgment, has the privilege, after judgment and within the time as properly fixed by the court, of submitting to the court, "a stenographic report of the trial, containing the evidence and the rulings of the court upon all or any of the questions submitted to and ruled upon by the judge thereof"; that if such a stenographic report is so submitted the judge is required to examine the same, and if found correct to "officially certify" to its correctness; that the same shall thereupon be filed in said court and become a part of the record in the cause, and all matters and things contained in such report shall become as effectually a part of said record as if duly certified in a formal bill or bills of exceptions; and that if it appears from such report that any matter was submitted to the trial court for a ruling, and that the court ruled "adversely to the party submitting the same," then such ruling is saved for review in any court to which the cause may be taken upon appeal or by writ of error, whether any formal exception to such ruling be noted or not.    We concur in this construction.

In the case of *Meek v. Chicago Rys. Co.*, 183 Ill. App. 256, 261, which was a case decided by the "C" branch of this court on appeal from the Circuit Court, it was said in the opinion written by Mr. Presiding Justice Graves:

"A consideration of section 81, as amended and as it existed prior thereto, discloses no reason, and none has been suggested for holding that by the amendment it was intended to substitute a stenographic report for a bill of exceptions, but does disclose a manifest intention to provide two co-ordinate methods of preserving for review rulings on questions arising in common law courts.    The first by means of a stenographic report of the trial and the second by means of a bill of exceptions, as theretofore.    *   *   *   The part of this amended section providing for bills of exceptions is

144 APPELLATE COURTS OF ILLINOIS.

Photo Cines Co. v. American Film Mfg. Co., 190 Ill. App. 124.

the original provision without change. * * *
When the legislature re-enacted that part of original
section 81 relating to bills of exceptions, it must be
presumed they did so in the light of the judicial con-
struction that had been given to it, and of the rights
of litigants existing under it and regardless of it, as
declared by the courts, as well as in the light of section
2 of chapter 131'' of our Revised Statutes.

The present case was tried in the Municipal Court
without a jury, resulting in the trial court making a
finding in favor of the plaintiff and entering a judg-
ment on the finding against the defendant, and the
latter seeks by writ of error to reverse that judgment,
chiefly because the finding and judgment are against
the weight of the evidence. There is contained in the
transcript of the record, not a bill of exceptions, but a
stenographic report of the trial, which report is certi-
fied to by the trial judge, and which, as it seems to
us, fully complies with all the requirements of the
first clause of said amended section 81 of the Practice
Act of 1907, as to such report. It appears from the
report that the chief matter or issue submitted to the
trial court by both plaintiff and defendant for a ruling
or decision was whether the plaintiff, under all the evi-
dence, was entitled to a finding and judgment in its
favor. The defendant claimed all through the trial
that it was not indebted to the plaintiff in any amount,
but the court, in entering the finding and judgment,
ruled adversely to the defendant. It further appears
from the report that when the court delivered the find-
ing the defendant moved to set it aside and for a new
trial, which motion was denied, but it does not appear
that when the court pronounced the judgment the de-
fendant took a formal exception thereto. The fact
that, when the court delivered the finding, the de-
fendant moved to set it aside and for a new trial, shows
that defendant *objected* to the action of the court and
that the judgment, which was thereupon immediately
pronounced, was not entered by consent.

The first words of said first clause of said section 81, as amended, are: "If, *during the progress of any trial* in any civil or criminal cause, either party shall submit to the court *any* matter for a ruling thereon and the court shall rule adversely to the party submitting the same, such ruling shall be deemed a matter for review in any court to which the same cause may be thereafter taken upon appeal or by writ of error without *formal exception thereto,*" etc.   To hold that by the use of these words, in a case tried before the court without a jury, the legislature intended that the adverse ruling of the court on a matter submitted should be confined to a ruling made before the court had pronounced the finding, and should not include the decision or judgment, would, as it seems to us, be a highly technical and unwarranted construction, especially in view of the provisions of section 82, the history of sections 81 and 82, the construction put upon them by our courts, the meaning of the word "trial," and the evident intention of the legislature to provide a method for the review of causes without the necessity of the record disclosing that a formal exception was taken at the time to the adverse ruling upon which error is assigned.

The record in the present case contains a stenographic report and not a bill of exceptions.   We are therefore under no necessity of discussing the question whether, if the record contained a bill of exceptions and the bill did not disclose a *formal* exception taken to the judgment, it was the intention of the legislature, in passing said amended section 81, to authorize us to review the evidence, notwithstanding the absence of such formal exception.

Our conclusion is that in the present case we may review the evidence contained in the stenographic report, notwithstanding that it does not appear in said report that defendant took a formal exception to the judgment

Counsel for defendant here contend (1) that the finding and judgment are against the weight of the evidence, in that it appears that all film purchased from plaintiff was purchased under plaintiff's express warranty that the film was first-class film and of good quality, and under an implied warranty that it was merchantable and fit for the purpose for which defendant desired it, that the lot of film in question was of the same kind and quality as other lots of film previously shipped by plaintiff, that the film previously shipped was not as warranted, and that upon the discovery by defendant of that fact defendant was justified in canceling the order for the lot of film in question and refusing to accept the same; (2) that plaintiff did not sufficiently prove the damages claimed by it and assessed by the court; and (3) did not sufficiently prove that the resale by plaintiff of the lot of film refused by defendant was made to the best advantage of defendant.

The material facts of the present case, as disclosed from the evidence, are substantially as follows: In November, 1910, Samuel Hutchinson, president of defendant company, called on Maurice Gennert, secretary and treasurer of plaintiff company, at that company's office in New York City. Hutchinson told Gennert that defendant desired to purchase some raw, positive, cinematograph film for use in defendant's business of manufacturing motion picture films for entertainment purposes. Gennert replied that plaintiff had for sale such film which was manufactured in England, that the price thereof was three and one-half cents per foot, cash on delivery, that it was first-class film, of good quality and fit for the purpose for which defendant desired it. Hutchinson, relying upon Gennert's statements, ordered a two weeks' supply of the film, and Gennert verbally agreed on plaintiff's behalf to ship said film to defendant, and the same was shipped and received by defendant and paid for. Several subsequent deliveries were made to defendant

Photo Cines Co. v. American Film Mfg. Co., 190 Ill. App. 124.

during the months of December, 1910, and January, 1911, and the film was paid for. It appears that raw, positive, cinematograph film consists of long, thin strips of celluloid, coated with an emulsion containing photographic properties, on which can be printed pictures from a negative film. After the pictures are printed on the positive film the same is further developed by photographic processes and put up in long lengths of about 1,000 feet on reels. Then the film is ready to be passed through a projecting machine by an exhibitor of motion pictures. The factory processes of printing and developing the film require several weeks' time. The standard length in January and February, 1911, of a first-class positive film was from 180 to 200 feet, and to make said 1,000 feet lengths several of the films had to be joined together. When the reels are completed they first go to a distributing and sales company, thence to a small exchange and finally to the theater or other user. Weaknesses and defects in the celluloid base cannot generally be noticed until the film has been in use for several weeks in the machine of the exhibitor. Ordinarily the reels should last six months to a year without repairs. During the last week in January, 1911, Hutchinson, while in New York, verbally ordered of plaintiff, through Gennert, two lots of 65,000 feet each, of raw film, to be shipped to defendant in February, and the first lot of approximately 65,000 feet was so shipped on February 8, 1911, cash on delivery, at said price of three and one-half cents per foot, plus express charges from New York to Chicago, and the same was subsequently received by defendant and paid for. According to the testimony of Hutchinson, he again saw Gennert in New York about February 5th and informed him that complaints had recently been received from customers of defendant as to the film which had previously been shipped by plaintiff to defendant, that the film was not of good quality and not as represented, that it would not wear or "hold up" the usual length of time, and

148 . Appellate Courts of Illinois.

Photo Cines Co. v. American Film Mfg. Co., 190 Ill. App. 124.

directed plaintiff not to ship any more of the film; that thereupon Gennert said that the first of said two lots had already been shipped and that defendant would have to take that lot; that Hutchinson agreed that defendant should take and pay for said first lot but told Gennert that defendant would not receive any more, and that this was the last conversation he had with Gennert. According to Gennert's testimony, this conversation was had at a later date, about February 15th, and Hutchinson agreed to accept both of the two lots of film when delivered. Gennert, however, admitted that he had a conversation with Hutchinson in New York about February 5th, at which time Hutchinson said that defendant was "having trouble with the film," but did not request plaintiff to pay back any money on account of any of the film previously delivered. The evidence also shows that plaintiff shipped by express, C. O. D., to defendant at Chicago, on February 16, 1911, said second lot of film, containing 68,012 feet, but that defendant refused to accept and pay for the same, and subsequently the film was returned by the express company to plaintiff at New York. Gennert admitted that the kind and quality of the film in the last shipment was precisely the same as in the previous shipments. The evidence also shows that after the lot of film in question was returned to plaintiff in New York, plaintiff sold "about" 9,500 feet thereof at three and one-half cents per foot, and subsequently returned the balance of said film to the original manufacturer in England and was paid for the same at the rate of two and one-fourth cents per foot. The damages claimed were based upon the difference in price, between three and one-half and two and one-fourth cents per foot, on said balance so returned to England, and for certain cash expended for express charges and for freight charges to England.

We think that it was shown by a preponderance of the evidence that all raw film purchased by defendant was purchased under plaintiff's express warranty, that

the same was first-class film and of good quality, and also under an implied warranty that it was merchantable and fit for the purpose for which defendant desired to use it, which purpose was known to plaintiff; that the defects in the raw film which was shipped to and accepted by defendant were of such a nature that they would not become noticeable until after the same had been prepared for use by exhibitors of motion pictures and had been in use by said exhibitors for a considerable time; that as soon as defendant received notice of said defects it notified plaintiff not to ship the lot of film in question, but that plaintiff nevertheless shipped the same, which defendant refused to accept; that the film of said lot in question was of the same kind and quality as that of the other lots previously shipped by plaintiff, and that the film of said other lots was not first-class film or of good quality, as warranted by plaintiff, and was not fitted for defendant's purpose, in that it was of uneven width, too brittle, and lacking in tensile strength.  And in our opinion the trial court, under all the evidence, was not justified in making the finding or entering the judgment.  *Doane v. Dunham*, 65 Ill. 512; *Underwood v. Wolf*, 131 Ill. 425.  Furthermore, the evidence as to plaintiff's damages was not sufficiently definite as to warrant the finding of the court.  And the evidence did not sufficiently disclose that plaintiff, in making the resale of the lot of film in question, did so to the best advantage of defendant.  *Bagley v. Findlay*, 82 Ill. 524; *John A. Roebling's Sons' Co. v. Lock Stitch Fence Co.*, 130 Ill. 660, 669.

The judgment of the Municipal Court is reversed and the cause remanded.

*Reversed and remanded.*

BARNES, PRESIDING JUSTICE:  I agree that the record leaves open for our consideration the question as to the sufficiency of the evidence, and that the judgment should be reversed and the cause remanded, but upon different reasoning.

I think the amendment to section 81, made in 1911, was intended to accomplish two things: (1) To permit a party to assign error in a court of review upon any adverse ruling or decision of the trial court without the formality of taking an exception thereto; and (2) to provide two methods of preserving the proceedings for review. It was not designed to recognize two distinct methods of practice, one requiring and the other dispensing with the formal taking of exceptions, and accordingly to resort or not to a bill of exceptions, if they were taken, and necessarily to a stenographic report, if they were not.

Before such amendment was made, a formal exception was requisite for an assignment of error, not only to an adverse ruling of the court made during the progress of the trial (using the term "trial" in its strict sense), but to its decisions on matters referred to in sections 82 and 83, and exceptions to all such matters were saved in a bill of exceptions. The amendment manifestly contemplates that the same matters may now be as effectively preserved for review by a stenographic report. Otherwise, while the rulings during the progress of the trial may be preserved by a stenographic report without formal exceptions, nevertheless, as to decisions on matters taking place thereafter, covered by sections 82 and 83 of the Practice Act, it would still be necessary to take formal exceptions and preserve them by a bill of exceptions in order to bring the entire proceedings before a court of review.

If, on the other hand, the statute be construed to mean that the formality of exceptions is dispensed with only in case the proceedings are preserved by a stenographic report, and when so preserved no exceptions need be taken to the matters provided for in sections 82 and 83, but that a bill of exceptions cannot be resorted to in case no formal exceptions were taken, as held in *Miller v. Anderson, supra,* then we have the anomaly of two methods of practice,—one where it is

necessary to take formal exceptions to all adverse rulings or decisions of the court at and subsequent to the trial, and another where they may all be dispensed with.

I think the statute should be construed to obviate any such *reductio ad absurdum,* and being a remedial statute, it should be construed liberally to carry out its manifest purposes as above stated, especially as it can be done without necessary conflict with other parts of the section or act.

The office of an exception is to indicate that the party taking it does not acquiesce in or consent to adverse rulings or decisions of the court. Under the practice heretofore, it has been necessary to take and preserve it as a basis for an assignment of error. Said amendment, however, changes that practice and allows the party against whom the ruling or decision is made to assign error and have the matter reviewed without *formal* exception. Therefore, a failure to except is no longer deemed consent to the ruling. Nevertheless, the assignment of error is still predicated upon the theory of nonconsent to adverse rulings whether an exception is actually taken or not; and it is immaterial for review whether the matter is brought before the court by a stenographic report showing no exception, or by a bill of exceptions alleging one which, under the amendment, is now preserved without the formality of taking it.

While the phraseology of section 81, as amended, is cumbersome and complicated, I think that this is the construction that will ultimately prevail.